BLANK ROME, LLP
Attorneys for Defendant
TIANJIN PORTRANS INT'L
SHIPPING AGENCY CO., LTD.
Jack A. Greenbaum (JG 0039)
405 Lexington Ave.
New York, N. Y. 10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PADRE SHIPPING, INC.,

    Plaintiff,

- v -

YONG HE SHIPPING, *et al*,

    Defendants.

07 CV 9682 (JFK)

**SECOND XU
DECLARATION IN SUPPORT
OF MOTION TO VACATE
MARITIME ATTACHMENT**

---

XU NUO deposes and says:

1. I am the General Manager of Tianjin Portrans International Shipping Agency Co., Ltd. (hereafter "Portrans"), one of the parties named as a defendant in this maritime attachment action. I submit this Second Declaration in support of Portrans' motion to vacate the order of attachment against it, and to vacate the restraints of US$558,499.33 of freight money that belongs to Golden Pacific Sea (HK) Ltd. ("Golden Pacific") and US$22,000 of disbursements that belongs to Kent Shipping China Service Co. ("Kent").

2. The details of the Golden Pacific freight money were addressed at paragraph 23 and Exhibits 18 through 24 of my first Declaration, which I incorporate herein.

3. The US$22,000 that Wachovia Bank advised it restrained in transit from Kent to Portrans was an advance for port disbursements for a vessel Kent was sending to Tianjin Xingang, the M/V AMARYLLIS. Exhibit 1 hereto is the estimate of port disbursements ("P/D")

Portrans sent to Kent on December 21, 2007. The AMARYLLIS eventually arrived at Tianjin Xingang on December 26, 2007 at 19:30 hours local time. Wachovia Bank advised it restrained Kent's transfer on December 26, 2007. At that time, Portrans had not advanced any disbursements on behalf of Kent and was not owed any debt by Kent. The disbursements were to be paid out of the funds that Kent advanced for that purpose. Those funds did not belong to Portrans and never were to belong to Portrans.

4. Regarding the bills of lading Portrans signed for cargo loaded on the PADRE at Tianjin Xingang, I confirm that, as alleged in the Third Amended Complaint, Portrans received its instructions from Old Eastern Mediterranean Shipping Co. S.A. with respect to the form and release of all such bills of lading, including but not limited to the inclusion of a "freight prepaid" clause. Further, Portrans sent Old Eastern Mediterranean drafts of each of the bills of lading before receiving confirmation to sign and release them.

5. I note that three of the Tianjin Xingang bills of lading included in Ex. D to the Third Amended Complaint (PT-08A, B, and C) were signed by Yong He Shipping (HK) Limited, not Portrans. In fact, Portrans had previously signed one bill of lading PT-08, but it was subsequently cancelled and replaced by PT-08A, B, and C on Old Eastern Mediterranean's instructions.

6. Portrans maintains only one U.S. Dollar bank account because only one such account is permitted under the foreign exchange laws and regulations of China. Exhibit 2 hereto is a copy of the regulations issued by the government agency named State Administration of Foreign Exchange ("SAFE") on July 25, 2002, in Chinese and English. All English translations of the Chinese language exhibits hereto were prepared and provided to me by a Mandarin speaking attorney in Blank Rome's office in Hong Kong. Article 17 provides that only one

2

128947.06501/6603817v.1

foreign exchange account is permitted to a business entity conducting business in a bonded area, such as the Tianjin Free Trade Zone in which Portrans is located. This is true for all types of businesses, including port agents such as Portrans. This fact is widely known in China. Therefore, all U.S. Dollar transfers to or from all of Portrans' clients, including payment of Portrans' fees, are sent from or received in that bank account in accordance with Chinese law. The funds are properly accounted for on Portrans' books of account, as is customary and necessary in China.

7. Exhibit 3 hereto is Portrans' original Bonded Area Foreign Exchange Registration Certificate, dated February 14, 2003. This Certificate acknowledges that Portrans is an international shipping agency doing business at the port of Tianjin Xingang and authorizes Portrans to have a U.S. Dollar foreign exchange bank account. The "Scope of Business" described in the Certificate includes "collecting and advancing fees for principals." The "fees" collected include shipping fees, in other words "freights" for the carriage of ocean cargoes.

8. Exhibit 4 hereto is the Approval Notice for Opening Domestic Enterprise Foreign Exchange Account, dated February 14, 2003, which authorizes Portrans to use the account to collect all payments received from its regular business activities as a port agent.

9. Exhibit 5 hereto is a Circular dated August 16, 2007, in which SAFE published regulations to integrate existing foreign exchange policies, adjust inconsistent policies, and simplify examination procedures, as stated on the first page. In that integration process, SAFE repealed other regulations, including the Circular dated July 25, 2002. (Ex. 2.)

10. The Circular dated August 16, 2007 (Ex. 5) provides at Article 7 that business enterprises in bonded areas, such as the Tianjin Free Trade Zone, shall use foreign exchange accounts pursuant to foreign exchange administrative provisions applicable outside the bonded

3

areas. Those administrative provisions are contained in Exhibit 6 hereto, which is a copy of SAFE's regulations dated December 1, 2001. Article 10 of Ex. 6 provides, in English translation: "one enterprise is only allowed to open one foreign exchange settlement account, and accounts in different currencies maintained with the same bank should be managed as if it is the same account." Article 10 also provides that large enterprises with an annual import and export amount of more than ten million U.S. Dollars may have more than one foreign exchange settlement account in different banks if there is an operational need. However, Portrans does not qualify for the U.S. Dollar minimum. Further, Portrans would not have an operational need for more than one U.S. Dollar account at more than one bank. A port agent is not required to have more than one U.S. Dollar account under Chinese law and trade practice, and there is nothing improper about using that account for all its clients' U.S. Dollar transfers, as well as its own U.S. Dollar transactions, such as receipt of its agency fees.

11. Exhibit 7 hereto is SAFE's Circular dated October 8, 2007 with an attached manual implementing the Circular of August 16, 2007. (Ex. 5.) Article 9 states: "All foreign exchange accounts of inside-area [*i.e.* bonded area] enterprises shall be consolidated in the general foreign exchange account information administration system and be managed together." By way of clarification, this refers to foreign exchange accounts for different nations' currencies. Portrans is permitted to have only one U.S. Dollar foreign exchange account.

12. Paragraph "1" of Ex. 7 requires that a new Registration Certificate be obtained before January 1, 2008. Exhibit 8 hereto is Portrans' current Bonded Area Foreign Exchange Registration Certificate issued by the State Administration of Foreign Exchange Tianjin Branch, dated November 13, 2007, which was obtained in compliance with Ex. 7.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Tianjin Free Trade Zone, PRC this ___ day of January 2008.

_____
XU NUO

128947.06501/6603817v.1