CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff,
Padre Shipping, Inc.
366 Main Street
Port Washington, New York 11050
Tel:  (516) 767-3600
Fax:  (516) 767-3605
Owen F. Duffy (OD-3144)
George E. Murray (GM-4172)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
PADRE SHIPPING, INC.,

                          Plaintiff,

            v.                                                    07 CV 9682 (JFK)

                                                         **THIRD AMENDED**
YONG HE SHIPPING, also known as,                         **VERIFIED COMPLAINT**
YONG HE SHIPPING (HK) LIMITED;
PROSPER SHIPPING LIMITED;
SHANGHAI COSFAR SHIPPING
INTERNATIONAL CO. LTD.;
AEGEAN CARRIERS SA;
GOLDED TAI SHIPPING LIMITED;
SOUTH AEGEAN SHIPPING;
OLD EASTERN MEDITERRANEAN CO., SA;
CHANGSHU HOTHEART INTERNATIONAL
SHIPPING AGENCY;
TIANJIN PORTRANS INTERNATIONAL
SHIPPING AGENCY CO., LTD. and,
LIANYUNGANG FAREAST INTERNATIONAL
SHIPPING,

                          Defendants.
-----------------------------------------------------------------X

        Plaintiff PADRE SHIPPING, INC., by its attorneys, as and for its Third Amended

Verified Complaint against the Defendants, YONG HE SHIPPING, which is also known

as YONG HE SHIPPING (HK) LIMITED, PROSPER SHIPPING LIMITED,

SHANGHAI COSFAR SHIPPING INTERNATIONAL CO. LTD., AEGEAN

CARRIERS SA, GOLDED TAI SHIPPING LIMITED, SOUTH AEGEAN SHIPPING,

OLD EASTERN MEDITERRANEAN CO., SA, CHANGSHU HOTHEART

INTERNATIONAL SHIPPING AGENCY, TIANJIN PORTRANS INTERNATIONAL

SHIPPING AGENCY CO., LTD. and, LIANYUNGANG FAREAST

INTERNATIONAL SHIPPING alleges upon information and belief as follows:

## JURISDICTION

1.    This Complaint sets forth admiralty and maritime claims within the

meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and the claims also fall

under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

## THE PARTIES

2.    At all times material hereto, Plaintiff PADRE SHIPPING LIMITED

(hereinafter "PADRE") was and still is a foreign business entity duly organized and

existing pursuant to the laws of Liberia.

3.    At all times material hereto, the Plaintiff PADRE was, and still is, the

Owner of the ocean going vessel known as the M/V PADRE.

4.    The M/V PADRE is a Liberian flagged bulk carrier that is strengthened

for the carriage of heavy cargoes such as steel products.

5.    At all times material hereto, Defendant YONG HE SHIPPING, also

known as YONG HE SHIPPING (HK) LIMITED (hereinafter collectively referred to as

"YONG HE"), was and still is a foreign business entity duly organized and existing pursuant to the laws of Hong Kong with an office and principal place of business in Hong Kong, S.A.R. People's Republic of China.

6.    The Defendant YONG HE is engaged in the business of transporting cargo by ocean vessel.

7.    The Defendant PROSPER SHIPPING LIMITED (hereinafter "PROSPER") was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country with an office and principal place business at Room 1009, Dongfeng Building, 534 Dongfeng Dong Lu, Guangzhou, 510060, People's Republic of China.

8.    The Defendant PROSPER is engaged in the business of transporting cargo by ocean vessel.

9.    The Defendant SHANGHAI COSFAR SHIPPING INTERNATIONAL CO. LTD. (hereinafter "COSFAR") was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country with an office and principal place of business at 14A Jin An Tower, 908 Dong Da Ming Road, Shanghai, 200082, People's Republic of China.

10.    The Defendant COSFAR is engaged in the business of transporting cargo by ocean vessel and is registered in China as a Non-Vessel Owning Common Carrier.

11.    The Defendant AEGEAN CARRIERS SA (hereinafter referred to as "AEGEAN"), was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country with an office and principal place of business in a foreign country.

12.    The Defendant AEGEAN is engaged in the business of transporting cargo by ocean vessel.

13.    At all times material hereto, Defendant GOLDED TAI SHIPPING LIMITED (hereinafter referred to as "GOLDED  TAI"), was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country with an office and principal place of business in a foreign country.

14.    The Defendant GOLDED TAI is engaged in the business of transporting cargo by ocean vessel.

15.    At all times material hereto, Defendant SOUTH AEGEAN SHIPPING (hereinafter referred to as "SOUTH AEGEAN"), was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country with an office and principal place of business in a foreign country.

4

16.     The Defendant SOUTH AEGEAN is engaged in the business of transporting cargo by ocean vessel.

17.     At all times material hereto, Defendant OLD EASTERN MEDITERRANEAN CO., SA  (hereinafter referred to as "OEM"), was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country with an office and principal place of business at 22 Eolou Street, 175 61 Paleo Faliro, Athens, Greece.

18.     Among other things, the Defendant OEM is engaged in the business of transporting cargo by ocean vessel.

19.     At all times material hereto, Defendant CHANGSHU HOTHEART INTERNATIONAL SHIPPING AGENCY (hereinafter referred to as "HOTHEART"), was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country with an office and principal place of business in a foreign country.

20.     The Defendant HOTHEART is engaged in business as a port agent, and HOTHEART was the agent for the Defendant YONG HE at the Port of Changshu, China with respect to the call of the M/V PADRE when the vessel was loading cargo pursuant to the YONG HE charter party.

21.    At all times material hereto, Defendant TIANJIN PORTRANS

INTERNATIONAL SHIPPING AGENCY CO., LTD. (hereinafter referred to as

"PORTRANS"), was and still is a foreign business entity duly organized and existing

pursuant to the laws of a foreign country with an office and principal place of business at

A3-1008, Teda New Skyline Business Centre, No. 12, Nanhai Road, Teda, Tianjin,

Peoples Republic of China.

22.    The Defendant PORTRANS is engaged in business as a port agent, and

PORTRANS was the agent for Defendant YONG HE at the Port of Tianjin, China with

respect to the call of the M/V PADRE at the Port of Tianjin, Xingang in October 2007

when the vessel was loading cargo pursuant to the YONG HE charter party.

23.    At all times material hereto, Defendant LIANYUNGANG FAREAST

INTERNATIONAL SHIPPING (hereinafter referred to as "FAREAST"), was and still is

a foreign business entity duly organized and existing pursuant to the laws of a foreign

country with an office and principal place of business in a foreign country.

24.    The Defendant FAREAST is engaged in business as a port agent, and

FAREAST was the agent for Defendant YONG HE at the Port of Lianyungang, China

with respect to the call of the M/V PADRE at the Port of Lianyungang, China in October

2007 when the vessel was loading cargo pursuant to the YONG HE charter party.

## THE MARITIME CONTRACT
## BETWEEN PADRE AND YONG HE

25.    On August 29, 2007, Plaintiff PADRE, as owner of the ocean going vessel

M/V PADRE, entered into a charter party contract with Defendant YONG HE

SHIPPING of Hong Kong, as charterer, whereby Defendant YONG HE hired the M/V

PADRE to perform a "one time charter trip of duration of about 65 days without

guarantee via China main ports to East/Central Med ports Charterers' option via safe

berths safe ports  and/or anchorages in/out geographical rotation always afloat always

accessible always within Institute Warranty limits sub Owners trading exclusion." *See*,

Exhibit A at clause 1.


26.    In exchange for the use of the M/V PADRE to carry its designated cargo,

and as provided for in the charter party dated August 29, 2007, the Defendant YONG HE

agreed to pay hire to Plaintiff PADRE in the amount of $36,000.00 per day every 15 days

in advance. *See*, Exhibit A at clauses 10 & 80.


27.    As provided for in the Charter Party, dated August 29, 2007, all payments

of hire due under the Charter Party were to be remitted to the account of Initium

Maritime Corp., which was the manager of the vessel for Plaintiff PADRE. *See*, Exhibit

A at clause 80.


28.    As provided for in the Charter Party, dated August 29, 2007, the Owner of

the M/V PADRE bargained for and acquired a contractual lien upon all cargoes and all

7

sub-freights and/or sub-hire irrespective of bills of lading for any amounts due the Charter Party including hire. *See*, Exhibit A at clause 23.

29.    As provided for in the Charter Party, dated August 29, 2007, the charterer, Defendant YONG HE, was authorized to sign bills of lading on behalf of the Master of the vessel, but only with the Master's prior written authority, always in strict conformity with the mate's receipts and all bills of lading were to be issued strictly without prejudice to the Charter Party dated August 29, 2007. *See*, Exhibit A at clause 30.

30.    The reasons for requiring that the bills of lading be only issued in conformity with the Mate's receipts and without prejudice to the Charter Party dated August 29, 2007 was to: (a) protect the vessel Owner from claims for cargo damage that were not occasioned by the vessel; and, more importantly, (b) to preserve the vessel Owner's right to exercise a lien upon all cargoes and all sub-freights and/or sub-hire in the event that the Charterer did not pay the hire or any other amounts due under the Charter Party.

31.    As provided for in the charter party dated August 29, 2007, the failure to make punctual and regular payments of hire due to oversight, negligence, errors or omissions on the part of the Charterers or their bankers was excusable provided the vessel Owner gave written notice of the default and the payment was effected within three (3) days. *See*, Exhibit A at clause 11.

32.    As provided for in the charter party dated August 29, 2007, any and all disputes between Plaintiff PADRE and Defendant YONG HE arising from the charter of the M/V PADRE were to be arbitrated in London and all disputes under the charter party are governed by English law. *See*, Exhibit A at 45.

33.    The charter party contract between Plaintiff PADRE and Defendant YONG HE is a maritime contract.

34.    In accordance with the maritime contract, the M/V PADRE was delivered to Defendant YONG HE on September 24, 2007.

## AS AND FOR A CAUSE OF ACTION
## AGAINST PADRE FOR BREACH OF MARITIME CONTRACT

35.    When the M/V PADRE was delivered to YONG HE on September 24, 2007, Defendant YONG HE was obligated to pay the first hire payment within 2 banking days and, also, pay for the value of the fuel then on board the vessel. *See*, Exhibit A at clause 80.

36.    In breach of its obligations under the charter party, Defendant YONG HE failed to pay the first hire payment on September 26, 2007 and, thereafter, the Defendant YONG HE persistently failed to pay hire on time in breach of the charter.

37.    In breach of the charter party, Defendant YONG HE did not pay the first hire payment and did not pay for the fuel until October 3, 2007 and October 9, 2007.

38.    In accordance with the terms and conditions of the charter party, the second hire payment became due and payable on October 9, 2007, but the Defendant YONG HE failed to make that payment on the date it was due.

39.    In accordance with the terms of conditions of the charter party, Plaintiff PADRE provided Defendant YONG HE with notice of default concerning the second hire payment on October 12, 2007, but Defendant YONG HE still failed to effect payment within the three (3) day grace period provided for in the Charter Party.

40.    The Plaintiff PADRE placed the Defendant YONG HE on notice that the payments of hire had to be made in accordance with the terms and conditions of the charter party, failing which the Plaintiff PADRE may exercise its right to withdraw the vessel or take other protective steps that were consistent with the terms and conditions of the Charter Party and the general maritime law.

41.    The Defendant YONG HE, its alter egos or agents, ultimately paid the second hire payment on October 26, 2007.

42.    The third hire payment, in the amount of US$524,280.00, became due on October 24, 2007, but the Defendant YONG HE failed to make that payment.

43.     In accordance with the terms and conditions of the charter party, the Plaintiff PADRE placed the Defendant YONG HE on notice of default with respect to the third hire payment on October 24, 2007, but Defendant YONG HE failed to effect payment within three (3) days and is in breach of its contractual obligations under the charter party.

44.     The Defendant YONG HE also failed to make full payment for the fourth hire payment, leaving a balance of $1,250.00 still due and owing from the total amount of the fourth hire payment that was due.

45.     The fifth hire payment, in the amount of US$527,250.00, became due on November 23, 2007, but the Defendant YONG HE failed to make that payment.

46.     The Defendant YONG HE has also failed to make a sixth hire payment that became due on December 8, 2007 in the amount of $569,200.00.

47.     The Defendant YONG HE failed to make a seventh hire payment that became due on December 23, 2007, which included the hire period up to January 7, 2007, in the amount of $527,250.00.

48.     The M/V PADRE is presently in the Port of Sagunto, Spain to discharge cargo and, therefore, the vessel is not expected to redeliver from the Charterer's service

until January 25, 2008, meaning that the final hire payment, which will become due and owing on January 8, 2007, will be in the amount of $648,000.00.

49.    Furthermore, by reason of the fact that the voyage has well exceeded the contemplated 65 days which was agreed to by the parties, the Plaintiff PADRE asserts a claim for a freight differential based on the fact that the prevailing market rates for similar vessels has risen and the rates are much higher now than then they were when Plaintiff Padre agreed to accept a rate of $36,000.00 per day for a time charter trip of only 65 days.

50.    The freight differential is $29,000 per day for the additional 59 days that the M/V PADRE has been, and will be, in the Defendant YONG HE's service past the originally agreed 65 days and up to the anticipated delivery date of January 25, 2008, which equates to a claim in the amount of $1,711,000.00.

51.    In addition to the above, the Plaintiff PADRE has a claim against the Defendant YONG HE for reimbursement of port expenses in the amount of $194,238.00, which the Plaintiff PADRE was required to pay to one of the Charterer's agents on December 27, 2007 and for which Plaintiff PADRE is entitled to reimbursement pursuant to the terms and conditions of the charter party. *See*, Exhibit A at clause 7.

52.    By reason of the Defendant YONG HE's repeated breaches of the maritime contract, the Plaintiff PADRE has served notice on Defendant YONG HE that

Plaintiff PADRE it will avail itself of all of its legal and contractual remedies including, but not limited to, arbitration at London.

53.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party in arbitration pursuant to English law.

54.    As best as can now be estimated, the Plaintiff PADRE expects to recover the following amounts from YONG HE in London arbitration:

| | | |
|---|---|---|
| A. | Principal claim for unpaid hire: | $2,797,230.00 |
| B. | Principal claim for freight differential: | $1,711,000.00 |
| C. | Reimbursement of Port Expenses: | $ 194,238.00 |
| D. | Estimated interest on claims: 3 years at 8%, compounded quarterly | $1,261,398.50 |
| E. | Estimated attorneys' fees in London: | $ 150,000.00 |
| F. | Estimated arbitration costs/expenses: | $ 50,000.00 |
| **Total** | | **$6,163,866.50** |

## AS AND FOR A CAUSE OF ALTER-EGO LIABILITY AGAINST DEFENDANTS PROSPER, COSFAR, AEGEAN, GOLDED TAI, SOUTH AEGEAN AND OEM

55.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "54" of the Third Verified Complaint as though set forth at length herein.

56.    At all material times, there existed such unity of ownership and interest between Defendant YONG HE and Defendants PROSPER, COSFAR, AEGEAN,

GOLDED TAI, SOUTH AEGEAN and/or OEM that no separation existed between them and the corporate form of Defendant YONG HE has been disregarded such that Defendant YONG HE primarily transacted the business of Defendants PROSPER, COSFAR, AEGEAN, GOLDED TAI, SOUTH AGEAN and/or OEM and, therefore, they are the alter egos of each other with respect to the charter of the M/V PADRE.

57.    At all material times, Defendant YONG HE chartered the M/V PADRE in the name of Defendants PROSPER, COSFAR, AEGEAN, GOLDED TAI, SOUTH AEGEAN and/or OEM such that Defendants PROSPER, COSFAR, AEGEAN, GOLDED TAI, SOUTH AEGEAN and/or OEM were the charterer of the M/V PADRE.

58.    At all material times, Defendant YONG HE and Defendants PROSPER, COSFAR, AEGEAN, GOLDED TAI, SOUTH AEGEAN and/or OEM have or had overlapping ownership, management, personnel and purposes such that Defendant YONG HE and Defendants PROSPER, COSFAR, AEGEAN, GOLDED TAI, SOUTH AEGEAN and/or OEM did not and do not operate at arms length.

59.    At all material times, there has been an intermingling of funds between Defendant YONG HE and Defendants PROSPER, COSFAR, AEGEAN, GOLDED TAI, SOUTH AGEAN and/or OEM.

60.    On October 3, 2007 and, again on, October 26, 2007, the alter ego Defendant PROSPER made hire payments on behalf YONG HE in respect of the M/V

14

PADRE to satisfy the contractual obligations of its alter ego YONG HE in circumstances where PROSPER was not contractually obligated to PADRE.

61.    In addition, upon information and belief, the Defendant PROSPER has made hire payments on behalf of YONG HE in respect of other vessels known as the M/V BRAVE JOHN and the M/V VARIOS IPIROS HELLAS in circumstances where Defendant PROSPER was not contractually obligated to pay hire in respect of those vessels. *See*, Industrial Carriers Inc. v. Yong He Shipping (HK) Ltd., 07 Civ. 9796 (S.D.N.Y., filed Nov. 1, 2007) and Navison Shipping Company A/S v. Yong He Shipping (HK) Ltd., 07 Civ. 9517 (S.D.N.Y., amended complaint filed Dec. 17, 2008).

62.    Upon information and belief, the Defendant YONG HE uses the Defendant PROSPER as a "paying or receiving agent" or "pass through" entity in an attempt to insulate its funds from lawful creditors such as Plaintiff PADRE.

63.    It is not general practice in the maritime community, nor anywhere else, for independent companies to make or receive large payments on behalf of other independent entities.

64.    The significant payments made by Defendant PROSPER on behalf of Defendant YONG HE are indicative of the fact that the two entities do not operate at arms length and funds are commingled between them.

65.    The alter ego Defendant AEGEAN issued or caused to be issued bills of lading in its name as "carrier" for the cargo shipped on board the M/V PADRE in satisfaction of the contractual obligations of its alter ego YONG HE.

66.    The fact that the Defendant AEGEAN issued or caused to be issued bills of lading in its name as "carrier" for the cargo shipped on board the M/V PADRE pursuant to the PADRE/YONG HE Charter Party dated August 29, 2007 is indicative of the fact that the Defendant AEGEAN and Defendant YONG HE do not operate at arms length.

67.    On at least one occasion, the defendant GOLDED TAI made arrangements to remit money to the Defendant SOUTH AGEAN who, in turn, made a partial payment of hire to PADRE to satisfy the contractual obligations of their alter ego YONG HE in circumstances where neither GOLDED TAI nor SOUTH AGEAN were contractually obligated to pay hire to the Plaintiff PADRE.

68.    Upon information and belief, the Defendant YONG HE uses Defendants GOLDED TAI and SOUTH AEGEAN as "paying or receiving agents" or "pass through" entities in an attempt to insulate its funds from lawful creditors such as Plaintiff PADRE.

69.    It is not general practice in the maritime community, nor anywhere else, for independent companies to make or receive large payments on behalf of other independent entities.

70.    The payments made by Defendants GOLDED TAI and SOUTH AEGEAN on behalf of Defendant YONG HE are indicative of the fact that the three entities do not operate at arms length and funds are commingled between them.

71.    The Defendant COSFAR has on several occasions guaranteed the obligations of the Defendant YONG HE with respect to the payment of hire for the M/V PADRE and, upon information and belief, has guaranteed the Defendant YONG HE's obligation to pay hire in respect of other vessels not related to the M/V PADRE.

72.    It is not general practice in the maritime community, nor anywhere else, for independent companies to guarantee payments of hire on behalf of other independent entities.

73.    The guarantees provided by the Defendant COSFAR in respect of the M/V PADRE, and other vessels chartered by Defendant YONG HE, are indicative of the fact that the Defendants YONG HE and COSFAR do not operate at arms length.

74.    At all material times, the Defendant OEM has booked cargo for the M/V PADRE, collected freight on behalf of the Defendant YONG and instructed agents on behalf of the Defendant YONG HE to an extent that is unprecedented for an independent company and, therefore, Defendants YONG HE and OEM do not operate at arms length.

75.    At all material times, Defendants PROSPER, COSFAR, AEGEAN, GOLDED TAI, SOUTH AGEAN and/or OEM have dominated, controlled and used the Defendant YONG HE for their own purposes such that there is no meaningful difference between the several entities, or *vice versa*.

76.    At all material times, Defendants PROSPER, COSFAR, AEGEAN, GOLDED TAI, SOUTH AGEAN and/or OEM have disregarded the corporate form of Defendant YONG HE to the extent that Defendant YONG HE was actually carrying on the business and operations of PROSPER, COSFAR, AEGEAN, GOLDED TAI, SOUTH AEGEAN and/or OEM as if the same were its own, or *vice versa*.

77.    There are reasonable grounds to conclude that the Defendants PROSPER, COSFAR, AEGEAN, GOLDED TAI, SOUTH AEGEAN and/or OEM are the alter egos of Defendant YONG HE or *vice versa* and, therefore, Plaintiff PADRE has a valid prima facie *in personam* claim against Defendants PROSPER, COSFAR, AEGEAN, GOLDED TAI, SOUTH AEGEAN and/or OEM based upon alter ego liability.

78.    Additionally, and/or alternatively, the Defendant YONG HE utilizes the Defendants PROSPER, COSFAR, AEGEAN, GOLDED TAI, SOUTH AEGEAN and/or OEM to transfer funds through, to and from the Southern District of New York on its behalf or *vice versa* in an attempt to evade Process of Maritime Attachment and, therefore, such parties are liable to the plaintiff as agents, partners or joint venturers of the Defendant YONG HE.

79.    As best as can now be estimated, the Plaintiff PADRE asserts a maritime claim against the Defendants PROSPER, COSFAR, AEGEAN, GOLDED TAI, SOUTH AEGEAN and/or OEM for the following amounts:

| | | | |
|---|---|---|---|
| A. | Principal claim for unpaid hire: | $2,797,230.00 |
| B. | Principal claim for freight differential: | $1,711,000.00 |
| C. | Reimbursement of Port Expenses: | $  194,238.00 |
| D. | Estimated interest on claims: | $1,261,398.50 |
| | 3 years at 8%, compounded quarterly | |
| E. | Estimated attorneys' fees in London: | $  150,000.00 |
| F. | Estimated arbitration costs/expenses: | $   50,000.00 |

**Total**                                                                      **$6,163,866.50**


## AS AND FOR AN INDEPENDENT AND
## DIRECT MARITIME CLAIM AGAINST DEFENDANT COSFAR

80.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "79" of the Third Verified Complaint as though set forth at length herein.

81.    During the course of the PADRE/YONG HE Charter party, the M/V PADRE loaded steels cargos in several Chinese ports including Changshu, Tianjin Xingang and Lianyungang for carriage to and discharge in Mediterranean ports.

82.    After the vessel's departure from China, and during the course of the voyage to the Mediterranean Sea, the M/V PADRE called at the Port of Singapore to take on fuel.

19

83.     At the time of the M/V PADRE's call in the Port of Singapore, the vessel's charterer, Defendant YONG HE, was already deeply in default of its obligation to pay hire.

84.     At the time of the M/V PADRE's call in the Port of Singapore, the vessel's Owner, Plaintiff PADRE, was threatening to terminate the voyage and/or withdraw the M/V PADRE from the charterer's service because the hire had not been paid.

85.     At the time of the M/V PADRE's call in the Port of Singapore, the Defendant COSFAR contacted the Plaintiff PADRE in an attempt to persuade the Plaintiff PADRE to resume the voyage and carry the cargo to the Mediterranean Ports for discharge to the intended receivers.

86.     Eventually, the Defendant COSFAR guaranteed that the future hire payments would be paid by COSFAR, in an amount that was estimated to be $2,000,000.00 at the time, provided the Plaintiff PADRE instructed the vessel to resume the voyage and continue on to deliver the cargo at the Mediterranean ports.

87.     In reliance of the guarantee to pay the future hire payments made by COSFAR, the Plaintiff PADRE delayed taking possible enforcement action in Singapore against the cargo on board the vessel and the Plaintiff PADRE instructed the M/V PADRE to resume its voyage and discharge the cargo at the Mediterranean ports.

88.     The M/V PADRE did resume the voyage from Singapore, and it has discharged a portion of the cargo carried on board to the receivers at the Mediterranean ports and it is continuing to discharge the cargo.

89.     The Plaintiff PADRE will make due demand of the Defendant COSFAR, but the Defendant COSFAR has not made any payments of the hire that it had guaranteed.

90.     The guarantee provided by the Defendant COSFAR to the Plaintiff PADRE is a maritime contract.

91.     By reason of its failure to honor its guarantee, the Defendant COSFAR is in breach of the maritime contract with Plaintiff PADRE.

92.     By reason of its breach of the maritime contract with Plaintiff PADRE, the Defendant COSFAR is independently and directly liable to the Plaintiff PADRE for a sum of $2,000,000.00 at a minimum.

### AS AND FOR AN INDEPENDENT AND
### DIRECT MARITIME CLAIM AGAINST DEFENDANT OEM

93.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "92" of the Third Verified Complaint as though set forth at length herein.

94.    While the M/V PADRE was loading cargo in Chinese ports or during the course of the vessel's voyage to the Mediterranean Sea, the Defendant OEM wrongfully and unlawfully authorized and/or instructed various shipping agents to issue and release unauthorized bills of lading to those parties that shipped cargo on board the M/V PADRE for carriage and delivery at Mediterranean ports.

95.    Specifically, the Defendant OEM wrongfully and unlawfully caused the various shipping agents to issue and release bills of lading that: (a) were pre-dated; (b) indicated that the cargo had been loaded clean on board; and, (c) stated that the freight had been pre-paid, when the fact of the matter was that the bills of lading issued were false.

96.    As a consequence of the Defendant OEM's wrongful and unlawful actions, the Plaintiff PADRE was unable to assert on a lien on the cargo carried pursuant to the bills of lading issued at the instructions of the Defendant OEM and the Plaintiff PADRE was unable to secure its claim for unpaid hire and, instead, the Plaintiff PADRE

was obligated to release and deliver the cargo the presenters of the bills of ladings at the Mediterranean ports.

97.    If the Plaintiff PADRE failed to release the cargo and attempted to exercise a lien on the cargo for unpaid hire, then the M/V PADRE would have been subject to arrest by the receivers of the cargo because the unlawful actions of the Defendant OEM had compromised and negated Plaintiff PADRE's right to exercise a lien on the cargo to satisfy its claim for unpaid hire by issuing unauthorized bills of lading.

98.    The Plaintiff PADRE is preparing to initiate a lawsuit or other legal action against the Defendant OEM in an appropriate venue to assert its claim for damages against the Defendant OEM.

99.    As best as can now be estimated, the Plaintiff PADRE expects to recover the following amounts from Defendant OEM:

| | | |
|---|---|---|
| A. | Principal claim for unpaid hire: | $2,797,230.00 |
| B. | Principal claim for freight differential: | $1,711,000.00 |
| C. | Reimbursement of Port Expenses: | $   194,238.00 |
| D. | Estimated interest on claims:<br>3 years at 8%, compounded quarterly | $1,261,398.50 |
| E. | Estimated attorneys' fees in London: | $   150,000.00 |
| F. | Estimated arbitration costs/expenses: | $     50,000.00 |
| **Total** | | **$6,163,866.50** |

AS AND FOR A DIRECT MARITIME
CLAIM AGAINST DEFENDANT HOTHEART

100.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "99" of the Third Verified Complaint as though set forth at length herein.

101.    In or about August of 2007, the Defendant HOTHEART was appointed by the Charterer's interests to act as port agent for the M/V PADRE which was scheduled to call at the Port of Changshu in late September of 2007 to load cargo at the Port of Changshu pursuant to the time charter between Plaintiff PADRE and Defendant YONG HE.

102.    While the M/V PADRE was in the Port of Changshu, the Master of the vessel provided the port agent, HOTHEART, with authority to issue bills of lading to the shippers of cargo on board the M/V PADRE, but the authority provided was a limited authority insofar as:

a) All bills of lading signed by HOTHEART for cargo loaded on board the M/V PADRE were to conform strictly with quantities, descriptions and remarks of the Mate's receipts;

b) All the bills of lading to be issued by HOTHEART for cargo loaded on board the M/V PADRE were required to incorporate the terms and conditions of the Charter Party between Plaintiff PADRE and Defendant YONG HE with the following wording to be written on the face of each bill of lading: "All terms conditions, liberties and exceptions of the c/p dd 29/08/07 including the law and arbitration

24

clause are herewith incorporated. In the event of a conflict and/or inconsistency between the provisions of the c/p dd: 29/08/2007 and those terms of the bill(s) of lading, the terms of the c/p are to prevail.

c)  All the bills of lading to be issued by HOTHEART for cargo loaded on board the M/V PADRE were to state: "weight, measure, quality, quantity and value unknown.

d)  The bills of lading to be issued by HOTHEART for cargo loaded on board the M/V PADRE were to bear the date on which loading of the cargo was concerned was completed and antedated or postdated bills of lading were not allowed.

e)  The bills of lading to be issued by HOTHEART for cargo loaded on board the M/V PADRE were not to be marked "freight prepaid."

103.    The Authorization provided by Plaintiff PADRE to Defendant HOTHEART constituted a maritime contract between the Plaintiff PADRE and the Defendant HOTHEART, an agency relationship and/or, at the very minimum, created a maritime duty on the part of the Defendant HOTHEART to act only in accordance with the authority provided by Plaintiff PADRE when issuing bills of lading for cargo shipped from the Port of Changshu.

104.    While the M/V PADRE was in the Port of Changshu, the vessel was loaded with 8,475.19 metric tons of various steel product cargoes that was being shipped by various shippers to receivers in Sagunto, Spain.

105.    While the M/V PADRE was in the Port of Changshu, and/or shortly thereafter, the port agent HOTHEART issued bills of lading to the shippers of the cargo that had been loaded on board the M/V PADRE in the Port of Changshu. *See*, Exhibit B.

106.    In blatant disregard of the authority that was provided by the Plaintiff PADRE to Defendant HOTHEART, in breach of contract, in breach of agency and in breach of duty, the Defendant HOTHEART issued numerous bills of lading that were unauthorized by the Plaintiff PADRE for cargo that was to be carried to ports in the Mediterranean Sea to the extent that some of the bills of lading were predated, the bills of lading did not identify Plaintiff PADRE as the carrier, but instead listed Defendant AEGEAN CARRIERS SA to be the carrier under the bills of lading, the bills of lading did not incorporate terms of the Charter Party dated August 29, 2007, the bills of lading issued by the Defendant HOTHEART made no mention of the quantities, descriptions and remarks of the Mate's receipts and the bills of lading noted that the freight had been pre-paid. *See*, Exhibit B, bills of lading issued by Defendant HOTHEART at Changshu, China.

107.    In blatant disregard of the authority that was provided by the Plaintiff PADRE to Defendant HOTHEART, in breach of contract and in breach of duty, the Defendant HOTHEART issued bills of lading that made reference to a fixture note and/or charter party dated September 3, 2007, which Plaintiff PADRE is not a party to and which Plaintiff PADRE has no knowledge of. *See*, Exhibit B.

26

108.    The Plaintiff PADRE did not learn that the Defendant HOTHEART issued bills of lading that were not authorized until the M/V PADRE arrived in Sagunto, Spain for discharge, and the consignees and/or intended receivers of the cargo for that port presented the bills of lading that had been issued by Defendant HOTHEART in breach of the clear authority which was given to Defendant HOTHEART by Plaintiff PADRE.

109.    The M/V PADRE arrived at the Port of Sagunto, Spain for discharge on or about January 2, 2008.

110.    When the M/V PADRE arrived at the Port of Sagunto, Spain, numerous exceptions to the cargo were noted by the intended receivers of the Changshu cargo insofar as much of the cargo exhibited rust, dents, scratches, mechanical damages and other damages, including missing cargo, that had been noted in the mate's receipts issued by the vessel personnel in Changshu, but which exceptions were not noted on the bills of lading by the Defendant HOTHEART as it was instructed to do by the Plaintiff PADRE.

111.    As a consequence of the exceptions to the cargo that were found on arrival in Sagunto, Spain, the discharging stevedores and the receivers placed the M/V PADRE and her Owner on notice that the vessel was being held responsible for all damages, claims and extra expenses resulting from the condition of the cargo.

112.    As a consequence of the Defendant HOTHEART's breach of the clear authority given by Plaintiff PADRE, the Plaintiff PADRE was unable to assert on a lien

on the Changshu cargo carried pursuant to bills of lading issued by Defendant HOTHEART at the Port of Sagunto to secure its claim for unpaid hire and, instead, the Plaintiff PADRE was obligated to release and deliver the cargo the presenters of the bills of ladings.

113.    If the Plaintiff PADRE failed to release the cargo and attempted to exercise a lien on the cargo for unpaid hire, then the M/V PADRE would have been subject to arrest by the receivers of the cargo because the Defendant HOTHEART had compromised and negated Plaintiff PADRE's right to exercise a lien on the cargo to satisfy its claim for unpaid hire by issuing unauthorized bills of lading.

114.    Indeed, if the Plaintiff PADRE had attempted to exercise a lien on the Changshu cargo when the vessel was in the Port of Singapore to secure its claim for unpaid hire, the Plaintiff PADRE would have been prevented from doing so by reason of the fact that the Defendant HOTHEART had issued unauthorized bills of lading.

115.    The Plaintiff PADRE has consulted with Chinese attorneys, who have advised the Plaintiff PADRE that it has a maritime claim against the Defendant HOTHEART for breach of the letter of Authorization which can, and will, be prosecuted in the maritime courts of the People's Republic of China against HOTHEART.

116.    The Plaintiff PADRE is preparing to initiate a lawsuit against the Defendant HOTHEART for breach of the letter of Authorization in the maritime courts of the People's Republic of China.

117.    As best as can now be estimated, the Plaintiff PADRE expects to recover the following amounts from Defendant HOTHEART in the Chinese litigation:

| | | |
|---|---|---|
| A. | Principal claim for unpaid hire: | $2,797,230.00 |
| B. | Principal claim for freight differential: | $1,711,000.00 |
| C. | Reimbursement of Port Expenses: | $ 194,238.00 |
| D. | Estimated interest on claims: 3 years at 8%, compounded quarterly | $1,261,398.50 |
| E. | Estimated attorneys' fees in London: | $ 150,000.00 |
| F. | Estimated arbitration costs/expenses: | $ 50,000.00 |
| **Total** | | **$6,163,866.50** |

## AS AND FOR A DIRECT MARITIME
## CLAIM AGAINST DEFENDANT PORTRANS

118.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "117" of the Third Verified Complaint as though set forth at length herein.

119.    In August of 2007, the Defendant PORTRANS was appointed by the Charterer's interests to act as port agent for the M/V PADRE which was scheduled to call at the Port of Tianjin in late September or early October to load cargo at the Port of Tianjin pursuant to the time charter between Plaintiff PADRE and Defendant YONG HE.

120.    On October 1, 2007, the Master of the M/V PADRE advised PORTRANS that he would not permit his vessel to berth and load cargo at the Port of Tianjin because the Plaintiff PADRE had not been paid charter hire by Defendant YONG HE.

121.    Shortly thereafter, the Defendant PORTRANS was instructed by the charterer's agents to collect the ocean freight from one of the cargo exporters and remit it to the bank account of Initium Marine Corp., which was the manager of the vessel for Plaintiff PADRE.

122.    On October 3, 2007, the Defendant PORTRANS advised the charterer's agent that PORTRANS was only able to remit freight payments to its "own" clients and it would, therefore, require a Freight Invoice and an Authorization letter from the M/V PADRE's manager before any freight could be collected and remitted to Initium Marine Corp., which was the manager of the vessel for Plaintiff PADRE.

123.    On October 6, 2007, Initium Marine Corp. instructed the Master of the M/V PADRE to provide the Defendant PORTRANS with the required Authorization letter so that the Defendant PORTRANS could collect freight and remit same to the Plaintiff PADRE as partial payment of hire.

124.    The Authorization Letter provided by the Master of the M/V PADRE to the Defendant PORTRANS gave PORTRANS the authority to issue bills of lading to the

shippers of cargo on board the M/V PADRE, but the authority provided was a limited authority insofar as:

a) All bills of lading signed by PORTRANS for cargo loaded on board the M/V PADRE were to conform strictly with quantities, descriptions and remarks of the Mate's receipts;

b) All the bills of lading to be issued by PORTRANS for cargo loaded on board the M/V PADRE were required to incorporate the terms and conditions of the Charter Party between Plaintiff PADRE and Defendant YONG HE with the following wording to be written on the face of each bill of lading: "All terms conditions, liberties and exceptions of the c/p dd 29/08/07 including the law and arbitration clause are herewith incorporated. In the event of a conflict and/or inconsistency between the provisions of the c/p dd: 29/08/2007 and those terms of the bill(s) of lading, the terms of the c/p are to prevail.

c) All the bills of lading to be issued by PORTRANS for cargo loaded on board the M/V PADRE were to state: "weight, measure, quality, quantity and value unknown.

d) The bills of lading to be issued by PORTRANS for cargo loaded on board the M/V PADRE were to bear the date on which loading of the cargo was concerned was completed and antedated or postdated bills of lading were not allowed.

e) The bills of lading to be issued by PORTRANS for cargo loaded on board the M/V PADRE were not to be marked "freight prepaid" unless the Defendant PORTRANS received specific instructions in that regard from the vessel's time charterer, Defendant YONG HE.

A copy of the Master's Authorization Letter to Defendant PORTRANS is attached herewith as Exhibit C.

125.    The Authorization Letter further made it clear that any failure to comply with the specific authority given to Defendant PORTRANS by Plaintiff PADRE would "render the bills of lading null and void as without my [Vessel's Master] authority, thus issued by you and for your own account and you [Defendant PORTRANS] will be held liable of the cost of all damages and consequential expenses." *See*, Exhibit C.

126.    The Defendant PORTRANS acknowledged receipt of the authority being provided by the Plaintiff PADRE because it signed copy of the authorization, and the signed copy of the authorization was given to the Master of the M/V PADRE. *See,* Exhibit C.

127.    The Authorization Letter provided by Plaintiff PADRE to Defendant PORTRANS, which was acknowledged by Defendant PORTRANS, constituted a maritime contract between the Plaintiff PADRE and the Defendant PORTRANS, an agency relationship and/or, at the very minimum, created a maritime duty on the part of the Defendant PORTRANS to act only in accordance with the authority provided by Plaintiff PADRE when issuing bills of lading for cargo shipped from the Port of Tianjin. *See*, Exhibit C.

128.    The M/V PADRE commenced loading of cargo in Tianjin, Xingang on October 2, 2007, and the vessel completed loading on October 6, 2007.

129.    While at the Port of Tianjin, Xingang, the M/V PADRE was loaded with 17,545.93 metric tons of steel products that were being shipped by several shippers for carriage to and discharge at La Spezia, Italy and Sagunto, Spain.

130.    In blatant disregard of the authority that was provided by the Plaintiff PADRE to Defendant PORTRANS, in breach of contract, in breach of the agency relationship and in breach of duty, the Defendant PORTRANS issued numerous bills of lading that were unauthorized by the Plaintiff PADRE for cargo that was to be carried to La Spezia, Italy and Sagunto, Spain to the extent that some of the bills of lading were predated September 29th and 30th, 2007 (which was before the vessel was even in the berth to load cargo in the Port of Tianjian), the bills of lading did not identify PADRE as the carrier, but instead listed Defendant AGEAN CARRIERS SA to be the carrier under the bills of lading, the bills of lading did not incorporate terms of the Charter Party dated August 29, 2007, the bills of lading issued by the Defendant PORTRANS made no mention of the quantities, descriptions and remarks of the Mate's receipts, the bills of lading issued by Defendant PORTRANS did not state: "weight, measure, quality, quantity and value unknown" and the bills of lading noted that the freight had been pre-paid. Copies of the bills of lading issued by the Defendant PORTRANS are attached herewith as Exhibit D.

131.    In blatant disregard of the authority that was provided by the Plaintiff PADRE to Defendant PORTRANS, in breach of contract, in breach of the agency relationship and in breach of duty, the Defendant PORTRANS issued many bills of lading that made reference to a charter party dated September 20, 2007, which Plaintiff PADRE is not a party to and which Plaintiff PADRE has no knowledge of, or the bills of lading did not make reference to any charter party or a charter party dated August 27. 2007.

132.    The Defendant PORTRANS did, nevertheless, apparently collect some freight in the amount of $420,635.30 from an exporter known as Changshu and another sum of $503,987.27 from an exporter known as COSCO Lianyungang International Freight.

133.    However, the Defendant PORTRANS deducted its own fees, and it only remitted the sum of $388,825.20 to Initium Maritime, and another sum of $401,877.80 was remitted to Defendant PROSPER some of which was later paid to Plaintiff PADRE or the manager of the M/V PADRE, Initium Maritime, in partial satisfaction of Defendant YONG HE's obligation to pay hire.

134.    The Plaintiff PADRE did not learn that the Defendant PORTRANS issued bills of lading that were not authorized until the M/V PADRE arrived in La Spezia, Italy for discharge, and the intended receivers of the cargo for that port presented the bills of

lading that had been issued by Defendant PORTRANS in breach of the clear authority which was given to Defendant PORTRANS by Plaintiff PADRE. *See,* Exhibit D.

135.    The M/V PADRE arrived in La Spezia, Italy on December 20, 2007, and commenced discharging cargo on Friday, December 21, 2007.

136.    When the M/V PADRE arrived at the Port of La Spezia, Italy, numerous exceptions to the cargo were noted by the intended receivers insofar as much of the cargo exhibited rust, dents, scratches, mechanical damages and other damages, including missing cargo, that had been noted in the mate's receipts issued by the vessel personnel in Tianjian, but which exceptions were not noted on the bills of lading issued by the Defendant PORTRANS as it was instructed to do by the Plaintiff PADRE.

137.    As a consequence of the exceptions to the cargo that were found on arrival in La Spezia, the discharging stevedores and the receivers placed the M/V PADRE and her Owner on notice that the vessel was being held responsible for all damages, claims and extra expenses resulting from the condition of the cargo.

138.    The damages, claims and extra expenses referred to in the preceding paragraph have not yet been quantified or liquidated.

139.    As a consequence of the Defendant PORTRANS' breach of the clear authority given by Plaintiff PADRE, the Plaintiff PADRE was unable to assert on a lien on the cargo to be discharged at the Port of La Spezia to secure its claim for unpaid hire.

140.    If the Plaintiff PADRE failed to release the cargo and attempted to exercise a lien on the cargo for unpaid hire, then the M/V PADRE would have been subject to arrest by the receivers of the cargo because the Defendant PORTRANS had compromised and negated Plaintiff PADRE's right to exercise a lien on the cargo to satisfy its claim for unpaid hire by issuing unauthorized bills of lading.

141.    Indeed, if the Plaintiff PADRE had attempted to exercise a lien on the Tianjin cargo when the vessel was in the Port of Singapore to secure its claim for unpaid hire, the Plaintiff PADRE would have been prevented from doing so by reason of the fact that the Defendant PORTRANS had issued unauthorized bills of lading.

142.    The M/V PADRE sailed from the Port of La Spezia, Italy on December 27, 2007 for its next port of call, Sagunto, Spain.

143.    The M/V PADRE arrived at the Port of Sagunto, Spain for discharge on or about January 2, 2008.

144.    As a consequence of the Defendant PORTRANS' breach of the clear authority given by Plaintiff PADRE with respect to the issuance of bills of lading for

36

cargo loaded in Tianjin, China, the Plaintiff PADRE was also unable to assert a lien on cargo shipped from the Port of Tianjin that is being, or will be, discharged at the Port of Sagunta, Spain to secure its claim for unpaid hire and, instead, the Plaintiff PADRE was, and will be, obligated to release and deliver the Tianjin cargo to the presenters of the bills of ladings issued by Defendant PORTRANS.

145.    The Plaintiff PADRE has consulted with Chinese attorneys, who have advised the Plaintiff PADRE that it has a maritime claim against the Defendant PORTRANS for breach of the letter of Authorization which can be prosecuted in the maritime courts of the People's Republic of China.

146.    The Plaintiff PADRE is preparing to initiate a lawsuit against the Defendant PORTRANS for breach of the letter of Authorization in the maritime courts of the People's Republic of China.

147.    As best as can now be estimated, the Plaintiff PADRE expects to recover the following amounts from Defendant PORTRANS in the Chinese litigation:

|   |   |   |
|---|---|---|
| A. | Principal claim for unpaid hire: | $2,797,230.00 |
| B. | Principal claim for freight differential: | $1,711,000.00 |
| C. | Reimbursement of Port Expenses: | $  194,238.00 |
| D. | Estimated interest on claims: 3 years at 8%, compounded quarterly | $1,261,398.50 |
| E. | Estimated attorneys' fees in London: | $  150,000.00 |
| F. | Estimated arbitration costs/expenses: | $   50,000.00 |
| **Total** |  | **$6,163,866.50** |

## AS AND FOR A DIRECT MARITIME
<u>CLAIM AGAINST DEFENDANT FAREAST</u>

148.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "147" of the Third Verified Complaint as though set forth at length herein.

149.    In or about August or September of 2007, the Defendant FAREAST was appointed by the Charterer's interests to act as port agent for the M/V PADRE which was scheduled to call at the Port of Lianyungang in October of 2007 to load cargo at the Port of Lianyungang pursuant to the time charter between Plaintiff PADRE and Defendant YONG HE.

150.    While the M/V PADRE was in the Port of Lianyungang, the Master of the vessel provided the port agent, FAREAST, with authority to issue bills of lading to the shippers of cargo on board the M/V PADRE, but the authority provided was a limited authority insofar as:

a) All bills of lading signed by FAREAST for cargo loaded on board the M/V PADRE were to conform strictly with quantities, descriptions and remarks of the Mate's receipts;

b) All the bills of lading to be issued by FAREAST for cargo loaded on board the M/V PADRE were required to incorporate the terms and conditions of the Charter Party between Plaintiff PADRE and Defendant YONG HE with the following wording to be written on the face of each bill of lading: "All terms conditions, liberties and exceptions of the c/p dd 29/08/07 including the law and arbitration

38

clause are herewith incorporated. In the event of a conflict and/or inconsistency

between the provisions of the c/p dd: 29/08/2007 and those terms of the bill(s) of

lading, the terms of the c/p are to prevail.

c) All the bills of lading to be issued by FAREAST for cargo loaded on board the

M/V PADRE were to state: "weight, measure, quality, quantity and value

unknown.

d) The bills of lading to be issued by FAREAST for cargo loaded on board the M/V

PADRE were to bear the date on which loading of the cargo was concerned was

completed and antedated or postdated bills of lading were not allowed.

e) The bills of lading to be issued by FAREAST for cargo loaded on board the M/V

PADRE were not to be marked "freight prepaid."

151.    The Authorization Letter provided by Plaintiff PADRE to Defendant

FAREAST constituted a maritime contract between the Plaintiff PADRE and the

Defendant FAREAST, an agency relationship and/or, at the very minimum, created a

maritime duty on the part of the Defendant FAREAST to act only in accordance with the

authority provided by Plaintiff PADRE when issuing bills of lading for cargo shipped

from the Port of Lianyungang.

152.    While the M/V PADRE was in the Port of Lianyungang, the vessel was

loaded with 6,098.76 metric tons of various steel product cargoes that were to be carried

to and discharged at Sagunto, Spain.

153.    While the M/V PADRE was in the Port of Lianyungang and/or shortly thereafter, the port agent Defendant FAREAST issued bills of lading to the shippers of the cargo that had been loaded on board the M/V PADRE in the Port of Lianyungang.

154.    In blatant disregard of the authority that was provided by the Plaintiff PADRE to Defendant FAREAST, in breach of contract, in breach of the agency relationship and in breach of duty, the Defendant FAREAST issued numerous bills of lading that were unauthorized by the Plaintiff PADRE for cargo that was to be carried to from the port of Lianyungang to the port of Sagunto, Spain because some of the bills of lading were predated, the bills of lading did not identify PADRE as the carrier, but instead listed Defendant AEGEAN CARRIERS SA to be the carrier under the bills of lading, the bills of lading did not incorporate terms of the Charter Party dated August 29, 2007, the bills of lading issued by the Defendant FAREAST made no mention of the quantities, descriptions and remarks of the Mate's receipts and the bills of lading noted that the freight had been pre-paid. Copies of the bills of lading issued by Defendant FAREAST have not yet been received as the M/V PADRE is still in the Port of Sagunto discharging and, therefore, they are not attached as exhibits hereto.

155.    In blatant disregard of the authority that was provided by the Plaintiff PADRE to the Defendant FAREAST, in breach of contract, in breach of the agency relationship and in breach of duty, the Defendant FAREAST issued bills of lading that made reference to a charter party which Plaintiff PADRE is not a party to and which Plaintiff PADRE has no knowledge of.

156.    The Plaintiff PADRE did not learn that the Defendant FAREAST issued bills of lading that were not authorized until the M/V PADRE arrived in Sagunto, Spain for discharge, and the intended receivers of the cargo for that port presented the bills of lading that had been issued by Defendant FAREAST in breach of the clear authority which was given to Defendant FAREAST by Plaintiff PADRE.

157.    The M/V PADRE arrived in Sagunto, Spain on or about January 2, 2007.

158.    When the M/V PADRE arrived at the Port of Sagunto, Spain, numerous exceptions to the cargo were noted by the intended receivers insofar as much of the cargo exhibited rust, dents, scratches, mechanical damages and other damages, including missing cargo, that had been noted in the mate's receipts issued by the vessel personnel in Lianyungang, but which exceptions were not noted on the bills of lading by the Defendant FAREAST as it was instructed to do by the Plaintiff PADRE.

159.    As a consequence of the exceptions to the cargo that were found on arrival in Sagunto, the discharging stevedores and the receivers have placed the M/V PADRE and her Owner on notice that the vessel was being held responsible for all damages, claims and extra expenses resulting from the condition of the cargo.

160.    As a consequence of the Defendant FAREAST's breach of the clear authority given by Plaintiff PADRE, the Plaintiff PADRE was unable to assert on a lien

on the Lianyungang cargo carried pursuant to bills of lading issued by Defendant FAREAST at the Port of Sagunto to secure its claim for unpaid hire and, instead, the Plaintiff PADRE was obligated to release and deliver the cargo the presenters of the bills of ladings.

161.    If the Plaintiff PADRE failed to release the cargo and attempted to, or attempts to, exercise a lien on the Lianyungang cargo for unpaid hire, then the M/V PADRE would have been, or will be, subject to arrest by the receivers of the cargo in the Port of Sagunto.

162.    Indeed, if the Plaintiff PADRE had attempted to exercise a lien on the Lianyngang cargo when the vessel was in the Port of Singapore to secure its claim for unpaid hire, the Plaintiff PADRE would have been prevented from doing so by reason of the fact that the Defendant FAREAST had issued unauthorized bills of lading.

163.    The Plaintiff PADRE has consulted with Chinese attorneys, who have advised the Plaintiff PADRE that it has a maritime claim against the Defendant FAREAST for breach of the letter of Authorization which can, and will, be prosecuted in the maritime courts of the People's Republic of China against FAREAST.

164.    The Plaintiff PADRE is preparing to initiate a lawsuit against the Defendant FAREAST for breach of the letter of Authorization in the maritime courts of the People's Republic of China.

165.    As best as can now be estimated, the Plaintiff PADRE expects to recover the following amounts from Defendant FAREAST in the Chinese litigation:

| | | |
|---|---|---|
| A. | Principal claim for unpaid hire: | $2,797,230.00 |
| B. | Principal claim for freight differential: | $1,711,000.00 |
| C. | Reimbursement of Port Expenses: | $  194,238.00 |
| D. | Estimated interest on claims: 3 years at 8%, compounded quarterly | $1,261,398.50 |
| E. | Estimated attorneys' fees in London: | $  150,000.00 |
| F. | Estimated arbitration costs/expenses: | $   50,000.00 |

**Total**                                                                                  **$6,163,866.50**

### PRAYER FOR RELIEF

166.    Notwithstanding the fact that the liability of the several Defendants is subject to determination by arbitration in London and/or subject to determination by the maritime courts of the People's Republic of China and/or subject to determination in other forums, there are now, or will be during the pendency of this action, certain assets, accounts, freights, monies, charter hire, credits, effects, payment for bunkers, goods or services, bills of lading, cargo and the like belonging to or claimed by the Defendants within this District and held by various parties, as garnishees.

167.    Plaintiff PADRE believes that some of these assets, *to wit*: bank accounts; payments of freight and/or hire from the shippers of the cargoes on board the M/V PADRE and/or other cargoes on other vessels chartered by YONG HE, its alter egos and/or agents; freight and/or hire payments being made to other vessel owners for vessels chartered by YONG HE and/or its alter egos and/or other defendants herein; freight

43

and/or hire and/or port disbursements being made to or from the port agent defendants; Clearing House Interbank Payment System (CHIPS) credits; and/or miscellaneous funds and payments, are being electronically transferred through intermediary banks located in this District in the possession of garnishees, namely banks or financial institutions located in New York.

168.    As set forth in the accompanying affidavit of Owen F. Duffy, the Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

169.    Because this Verified Complaint sets forth an *in personam* maritime claim against the Defendants and because the Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, the requirements for a Rule B attachment and garnishment are met and Plaintiff seeks the issuance of process of maritime attachment so that it may obtain security for its claims against the Defendants and/or *quasi in rem* jurisdiction over the property of the Defendants, in the event that the Defendants challenge the jurisdiction of the London arbitrators, the jurisdiction of the maritime courts of the People's Republic of China and/or other appropriate forums so that an eventual judgment and/or award can be satisfied.

WHEREFORE, Plaintiff prays as follows:

A.     That the Defendants be summoned to appear and answer this Verified Complaint;

B.     That the Defendants not being found within this District, as set forth in the Affidavit of Owen F. Duffy, then all of their assets, accounts, freights, monies, charter hire, credits, effects, payment for bunkers, goods or services, bills of lading, cargo and the like, whether tangible or intangible, belonging to or claimed by the Defendants within this District up to the amount sued for herein be attached pursuant to Supplemental Rule B and to pay Plaintiff's damages;

C.     That this Court retain jurisdiction over this matter through the entry of a judgment either by this Court, and/or the London arbitration panel and/or other appropriate court of competent jurisdiction, so that judgment may be entered in favor of Plaintiff for the amount of its claim with costs, *i.e.* US $6,163,866.50, and that a judgment of condemnation and sale be entered against the property arrested and attached herein in the amount of Plaintiff's claim, plus costs to be paid out of the proceeds thereof; and

D.     That Plaintiff has such other and further relief as the Court may determine to be just and proper under the circumstances.

Dated: Port Washington, New York
       January 4, 2008

                              CHALOS, O'CONNOR & DUFFY, LLP
                              Attorneys for Plaintiff,
                              PADRE SHIPPING, INC.

       By:     _____
                              Owen F. Duffy (OD-3144)
                              George E. Murray (GM-4172)

366 Main Street
Port Washington, New York 11050
Tel:  (516) 767-3600 / Fax:  (516) 767-3605

CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff,
Padre Shipping, Inc.
366 Main Street
Port Washington, New York 11050
Tel:  (516) 767-3600
Fax:  (516) 767-3605
Owen F. Duffy (OD-3144)
George E. Murray (GM-4172)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
PADRE SHIPPING, INC.,

                              Plaintiff,                                    07 CV 9682 (JFK)

          v.

YONG HE SHIPPING, also known as,                          **VERIFICATION FOR**
YONG HE SHIPPING (HK) LIMITED;                          **THIRD AMENDED**
PROSPER SHIPPING LIMITED;                                    **VERIFIED COMPLAINT**
SHANGHAI COSFAR SHIPPING
INTERNATIONAL CO. LTD.;
AEGEAN CARRIERS SA;
GOLDED TAI SHIPPING LIMITED;
SOUTH AEGEAN SHIPPING;
OLD EASTERN MEDITERRANEAN CO., SA;
CHANGSHU HOTHEART INTERNATIONAL
SHIPPING AGENCY;
TIANJIN PORTRANS INTERNATIONAL
SHIPPING AGENCY CO., LTD. and,
LIANYUNGANG FAREAST INTERNATIONAL
SHIPPING,

                              Defendants.
-------------------------------------------------------------X
STATE OF NEW YORK          :
                                          : ss.
COUNTY OF NASSAU          :


          BEFORE ME, the undersigned authority, personally came and appeared Owen F.

Duffy, who, after being duly sworn, did depose and state:

1.    That he is a partner in the law firm of Chalos, O'Connor & Duffy LLP,

counsel for the Plaintiff, PADRE SHIPPING, INC., herein;

2.    That he has read the foregoing complaint and knows the contents thereof;

3.    That he believes the matters to be true based on documents and

information obtained from employees and representatives of the Plaintiff through its

agents, underwriters and attorneys; and

4.    That the reason that this verification was made by deponent and not by the

Plaintiff is because Plaintiff is a foreign corporation, whose officers' verification could

not be obtained within the time constraints presented by the circumstances of this case.

Dated: Port Washington, New York
        January 4, 2008

                        CHALOS, O'CONNOR & DUFFY, LLP
                        Attorneys for Plaintiff,
                        PADRE SHIPPING, INC.

By: _____
                        Owen F. Duffy (OD-3144)
                        George E. Murray (GM-4172)
                        366 Main Street
                        Port Washington, New York 11050
                        Tel:  (516) 767-3600
                        Fax:  (516) 767-3605

Subscribed and sworn to before me this
January 4, 2008

_____
Notary Public, State of New York

                     **GEORGE E. MURRAY**
                  **Notary Public, State of New York**
                      **No. 02MU6108120**
                    **Qualified in New York County**
                **Commission Expires April 12, 2008**

2