CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff,
Padre Shipping, Inc.
366 Main Street
Port Washington, New York 11050
Tel:  (516) 767-3600
Fax:  (516) 767-3605
Owen F. Duffy (OD-3144)
George E. Murray (GM-4172)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
PADRE SHIPPING, INC.,

                              Plaintiff,

                                                                    07 CV 9682 (JFK)

          v.

YONG HE SHIPPING, also known as,
YONG HE SHIPPING (HK) LIMITED;
PROSPER SHIPPING LIMITED;
SHANGHAI COSFAR SHIPPING
INTERNATIONAL CO. LTD.;
AEGEAN CARRIERS SA;
GOLDED TAI SHIPPING LIMITED;
SOUTH AEGEAN SHIPPING;
OLD EASTERN MEDITERRANEAN CO., SA;
CHANGSHU HOTHEART INTERNATIONAL
SHIPPING AGENCY;
TIANJIN PORTRANS INTERNATIONAL
SHIPPING AGENCY CO., LTD. and,
LIANYUNGANG FAREAST INTERNATIONAL
SHIPPING,

                              Defendants.
------------------------------------------------------------------X

## MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION TO VACATE ATTACHMENT

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ……………………………………………...………......ii

TABLE OF AUTHORITIES ………………………….……………….....................iii

PRELIMINARY STATEMENT...……………………..…………………….....…………….1

STATEMENT OF FACTS…………………………………………………….................1

LEGAL ARGUMENT…………………………………………………….................................2

     I.    THE GROUNDS FOR VACATUR OF PROCESS OF
          MARITIME ATTACHMENT ARE LIMITED BY AQUA
          STOLI…………………………………………………………………..2

     II.   PADRE HAS A VALID PRIMA FACIE MARITIME CLAIM
          AGAINST THE DEFENDANT PORTRANS…………………………3

     III.  DEFENDANT PORTRANS HAS AN ATTACHABLE INTEREST
          IN THE FUNDS THAT HAVE BEEN RESTRAINED PURSUANT
          TO THE WRITS OF ATTACHMENT…………………………………14

CONCLUSION ……………………….................................................................22

## <u>TABLE OF AUTHORITIES</u>

PAGE

**CASES**

<u>AET Inc. Limited v. Procuradoria de Servicios Maritimos Cardoso & Fonesca</u>,
464 F. Supp. 2d 241 (S.D.N.Y. 2006)...............................17, 18, 19, 20, 21

<u>Aqua Stoli Shipping Ltd. v. Gardiner Smith Pty Ltd.</u>,
460 F.3d 434 (2d Cir. 2006)............................................2, 3, 4, 6, 7, 14, 15, 19, 20

<u>Asoma Corp. v. SK Shipping Co.</u>,
67 F.3d 817 (2d Cir. 2006)..............................................................5

<u>Chiquita International Limited v. M/V BOSSE</u>,
2007 U.S. Dist. LEXIS 75726 (S.D.N.Y. Oct. 11, 2007)........................20, 21

<u>Compania Sudamericana de Vapores, S.A. v. Sinochem Tianjin Co.</u>,
2007 U.S. Dist. LEXIS 24737 (S.D.N.Y. April 4, 2007)........................14, 15

<u>Dolco Invs., Ltd. v. Moonriver Dev., Ltd.</u>,
2007 U.S. Dist. LEXIS 31101 (S.D.N.Y. Apr. 26, 2007)......................3, 4

<u>DS Bulk Pte. Ltd. v. Calder Seacarrier Corp.</u>,
2006 U.S. Dist. LEXIS 39242 (S.D.N.Y. June 13, 2006)............................15

<u>Essar Int'l, Ltd. v. Martrade Gulf Logistics</u>,
2007 U.S. Dist. LEXIS 61713 (S.D.N.Y. Aug. 23, 2007)............................14

<u>Exxon Corp. v. Central Gulf Lines, Inc.</u>,
00 U.S. 603, 111 S. Ct. 2071, 114 L. Ed. 2d 649 (1991)............................4

<u>Finecom Shipping Ltd. v. Multi Trade Enterprises AG</u>,
2005 U.S. Dist. LEXIS 25761 (S.D.N.Y. Oct. 25, 2005)............................7

<u>General Tankers Pte. Ltd. v. Kundan Rice Mills Ltd.</u>,
2007 U.S. Dist. LEXIS 14355 (S.D.N.Y. Feb. 21, 2007)............................15

<u>HBC Hamburg Bulk Carriers GMBH & Co. KG v. Proteinas y Oleicos S.A. de C.V.</u>,
2005 U.S. Dist. LEXIS 8009 (S.D.N.Y. May 4, 2005)..............................15

<u>Ice Flake Maritime Ltd. v. Westcoast AS</u>,
2007 U.S. Dist. LEXIS 75677 (S.D.N.Y. Oct. 11, 2007)............................7

<u>Japan Line, Ltd. v. Willco Oil Ltd.</u>,
24 F.Supp. 1092 (D.Conn. 1976)..........................................................7

Norfolk Southern Railway Co. v. Kirby,
    43 U.S. 14, 125 S. Ct. 385, 160 L. Ed. 2d 283 (2004)……………………………….5

North of England Protecting and Indem. Ass'n v. M/V Nara,
    1999 U.S. Dist. LEXIS 22375 (E.D. La. Mar. 1, 1999)………………………….....7

Sea Transport Contractors, Ltd. v. Industries Chemiques Du Senegal,
    411 F.Supp.2d 386 (S.D.N.Y. 2006)……………………………………………....4, 5

Seatrans Shipping Corp. v. Interamericas Marine Transp.,
    1997 U.S. Dist. LEXIS 5665 (S.D.N.Y. Apr. 28, 1997)…………………………….8

Sirius Ins. Co. (UK) Ltd. v. Collins,
    6 F.3d 34 (2d Cir. 1994)………………………………………………………....…4

Sonito Shipping Co., Ltd. v. Sun United Maritime Ltd.,
    2007 U.S. Dist. LEXIS 19531 (S.D.N.Y. Mar. 19, 2007)………………4, 8, 9, 11

T&O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A.,
    415 F.Supp. 2d 310 (S.D.N.Y. 2006)…………………………………………8, 9, 11

Tide Line, Inc. v. Eastrade Commodities, Inc.,
    2006 U.S. Dist. LEXIS 95870 (S.D.N.Y. Aug. 15, 2006)…………………….....3

Wajilam Exps. (Singapore) Pte, Ltd. v. ATL Shipping Ltd.,
    475 F. Supp. 2d 275 (S.D.N.Y. 2006)……………………………………....6, 12

Winter Storm Shipping, Ltd. v. TPI,
    310 F.3d 263 (2d Cir. N.Y. 2002),
    *cert. denied* 539 U.S. 927 (2003)……………………………………14, 15, 17, 19

**STATUTES and RULES**

*Fed. R. Civ. P.* 12………………………………………………………...............……..7

*Fed. R. Civ. P.* 56………………………………………………………....……….…..7

*Fed. R. Civ. P.*, Supplemental Rules for Certain Admiralty and Maritime Claims,
Rule B.............................................................................2, 3, 5, 6, 8, 13, 14, 15, 16, 19, 20

*Fed. R. Civ. P.*, Supplemental Rules for Certain Admiralty and Maritime Claims,
Rule B(1)(a)-(b)...........................................................................................14

*Fed. R. Civ. P.*, Supplemental Rules for Certain Admiralty and Maritime Claims, Rule E.................................................................................................................................2, 12

*Fed. R. Civ. P.*, Supplemental Rules for Certain Admiralty and Maritime Claims, Rule E(4)(f)...........................................................................................................................7, 19

## PRELIMINARY STATEMENT

Plaintiff, PADRE SHIPPING, INC. (hereinafter "Padre Shipping"), submits this Memorandum of Law in Opposition to defendant's, TIANJIN PORTRANS INTERNATIONAL SHIPPING AGENCY CO., LTD. (hereinafter "Portrans"), Motion to Vacate the Process of Maritime Attachment and Garnishment that was issued by the Court for the above-captioned action.

## STATEMENT OF FACTS

The facts and supporting documents pertaining to the instant Opposition to the Motion to Vacate the Process of Maritime Attachment and Garnishment and Dismiss the Complaint as against Portrans are more fully set forth in: (1) The 3rd Verified Amended Complaint, dated January 4, 2008 ("Amended Complaint"); (2) the accompanying Declaration of Owen F. Duffy, dated January 25, 2008, in Opposition of the Motion ("Duffy Declaration"); (3) the accompanying Declaration of Judge Chen Zhensheng, dated January 23, 2008, in Opposition to the Motion ("Judge Chen Declaration"); (4) the accompanying Declaration of Mark T. O'Neil, Esq., dated January 25, 2008, in Opposition to the Motion; and (5) the Declarations of Mr. Xu Nuo, dated December 26, 2007 and January 10, 2008, in support of the Motion. Because the Amended Complaint is comprehensive, includes supporting documents and adequately sets forth the history of the underlying claims, rather than restate the facts fully herein, this Memorandum of Law will make reference to, and will discuss as appropriate, the facts set forth the Amended Complaint, the accompanying Declarations and the Declarations presented by the defendant.

1

## LEGAL ARGUMENT

### POINT I

### THE GROUNDS FOR VACATUR OF PROCESS
### OF MARITIME ATTACHMENT ARE LIMITED BY AQUA STOLI

Any legal analysis undertaken in connection with a Motion to Vacate a Process of Maritime Attachment must begin with the Court of Appeals for the Second Circuit's decision entitled Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434 (2nd Cir. July 31, 2006). In Aqua Stoli, the Court of Appeals rejected the notion that the district courts are to engage in a broad inquiry into the validity of a maritime attachment on a motion to vacate. 460 F.3d at 446. The Aqua Stoli case has since been often cited for the Court's holdings that:

> An attachment should issue if the plaintiff shows that: 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment.

> And,

> A district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E or in other limited circumstances, such as where: 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain in personam jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.
> 460 F.3d at 446.

In Aqua Stoli, the Court of Appeals noted that the question presented on appeal was "to what extent the district court may require a showing by the plaintiff beyond the simple fact that the textual requirements of Rule B have been met." 460 F. 3d at 438. When it

answered that question, the Court of Appeals emphasized that "Rule B specifies the sum total of what must be shown for a valid maritime attachment." 460 F.3d at 448.

In the case at hand, the defendant Portrans is seeking to vacate the Process of Attachment and the restraint of EFT payments based on two separate arguments. Portrans argues the attachment should be vacated as against defendant Portrans because: 1) the complaint fails to state a *prima facie* claim against Portrans; and, 2) the defendant's property has not been found within the district. *See*, Portrans' Memorandum of Law at Points I & II. Portrans does not argue that it is found within the Southern District of New York or that there is a statutory or maritime law bar to the attachment, nor does Portrans argue that is subject to suit in a convenient adjacent jurisdiction, that it is subject to *in personam* jurisdiction in a district where the plaintiff is located or that the plaintiff has already obtained sufficient security for the potential judgment against defendant Portrans. For the reasons set forth in Points II and III of this Memorandum of Law in Opposition to the Motion to Vacate, neither of Portrans' two arguments to vacate the Process of Maritime Attachment succeeds. The motion to vacate the attachment must be denied

## POINT II

### PADRE HAS A VALID PRIMA FACIE MARITME CLAIM AGAINST THE DEFENDANT PORTRANS

Aqua Stoli requires the district courts to limit their Rule B inquiries to whether the plaintiff has stated a *prima facie* basis for the maritime attachment at issue. Aqua Stoli, 460 F.3d at 445; *see also*, Tide Line, Inc. v. Eastrade Commodities, Inc., 2006 U.S. Dist. LEXIS 95870, *12 to 17 (S.D.N.Y. Aug. 15, 2006)(KMW)(discussing the holding and rationale of Aqua Stoli and the *prima facie* standard.). In Dolco Investments, Ltd. v. Moonriver Development, Ltd., Judge Sweet, citing cases, noted: "The majority of courts in this district to have considered the

3

issue have interpreted <u>Aqua Stoli</u> to require the application of the *prima facie* standard when considering the adequacy of the claim in a maritime vacatur motion." 2007 U.S. Dist. LEXIS 31101 * 10 (S.D.N.Y. Apr. 26, 2007).

Notwithstanding Portrans' attempts to argue the merits of its defense to Padre's claim in its motion to vacate, the case before the Court turns on whether Padre has satisfied the first requirement of <u>Aqua Stoli</u>, namely whether the complaint pleads "a valid *prima facie* admiralty claim." <u>Sonito Shipping Co., Ltd. v. Sun United Maritime Ltd.</u>, 2007 U.S. Dist. LEXIS 19531 *9 (S.D.N.Y. Mar. 19, 2007). If the Court finds that the plaintiff Padre Shipping presents a *prima facie* maritime claim, then the attachment cannot be vacated. <u>Aqua Stoli</u>, 460 F.3d at 447. Conversely, if the complaint does not state a *prima facie* maritime claim, the attachment should be vacated. <u>Sea Transport Contractors, Ltd. v. Industries Chemiques Du Senegal</u>, 411 F.Supp.2d 386, 392 (S.D.N.Y. 2006); *see also*, <u>Dolco Investments, Ltd. v. Moonriver Development, Ltd.</u>, 2007 U.S. Dist. LEXIS (S.D.N.Y. Apr. 26, 2007)("To sustain the attachments, Dolco must demonstrate that it has "an *in personam* claim against Defendants which is cognizable in admiralty …. In other words, the plaintiff's must be one which will support a finding of admiralty jurisdiction.").

The jurisdictional grant of the district court extends to contracts "which relate to the navigation, business, or commerce of the sea." <u>Sirius Ins. Co. (UK) Ltd. v. Collins</u>, 16 F.3d 34, 36 (2d Cir. 1994) (citations omitted). As directed by the Supreme Court, district courts are to make a case-by-case judgment of such a contract based upon "the subject matter of the . . . contract" and "the services performed under the contract." <u>Exxon Corp. v. Central Gulf Lines, Inc.</u>, 500 U.S. 603, 612, 111 S. Ct. 2071, 114 L. Ed. 2d 649 (1991). The ultimate determination turns on "the nature and character of the contract" and whether the contract has "reference to

4

maritime service or maritime transactions." <u>Norfolk Southern Railway Co. v. Kirby</u>, 543 U.S. 14, 24, 125 S. Ct. 385, 160 L. Ed. 2d 283 (2004). Accordingly, the only real issue for this court to consider is whether the subject matter of the dispute is so attenuated from the business of maritime commerce that it would not implicate any of the concerns underlying admiralty and maritime jurisdiction. <u>Sea Transport</u>, 411 F. Supp.2d at 393.

In the case at hand, there is no serious argument that the plaintiff Padre Shipping does not present a valid *prima facie* maritime claim. The claim that is asserted against the defendant Portrans is that Portrans breached its agreement with Padre, and Portrans disregarded the limited authority provided by Padre with respect to the issuance of the bills of lading for cargo that was to be carried on board Padre's vessel, the M/V PADRE, from the Far East to ports in the Mediterranean Sea. *See*, Complaint at ¶s 116 to 145. It is well settled that disputes involving ocean bills of lading should be interpreted using ordinary principles of maritime contract law. *See e.g.*, <u>Asoma Corp. v. SK Shipping Co.</u>, 467 F.3d 817, 823 (2d Cir. 2006) ("Charter parties and bills of lading are interpreted using the ordinary principles of maritime contract law."); *cf.*, <u>Sea Transport</u>, 411 F.Supp. at 396 (Judge Casey held that a Cooperation contract to operate the defendant's shipping management was a maritime contract for the purposes of justifying a Rule B attachment). Because the claim against Portrans relates to the contracts of carriage of goods by sea, i.e. the bills of lading, on board the M/V PADRE and because the plaintiff has presented more than sufficient factual allegations in the Amended Complaint to satisfy any standard of pleading under the Federal Rules of Civil Procedure, the plaintiff Padre Shipping's claim against Portrans is, on its face, a *prima facie* admiralty claim and the attachment cannot be vacated.

Any fair reading of the defendant Portrans' motion to vacate demonstrates that Portrans, itself, recognizes that plaintiff Padre has asserted a valid *prima facie* admiralty claim. This is self

evident from the nature of the argument presented by Portrans. Under the guise of challenging the existence of a *prima facie* claim, Portrans has resorted to challenging the merits of the claim based on its own interpretation of the facts and the law. For one example, whereas Portrans characterizes its argument to be "there is no prima facie claim", Portrans is actually arguing the factual merits of its own defense to the claim when it makes the bold assertion that "Portrans complied with the Master's letter of authority regarding the signing of 'freight prepaid' bills of lading." *See*, Portrans' Memorandum of Law at Point I A. That is a factual argument that goes to the merits of the claim. For another example, Portrans argues that, under the facts of this case, Portrans was required to authorize issuance of "freight prepaid" bills of lading. *See*, Portrans' Memorandum of Law at Point I B. That is a legal argument that is based on Portrans' interpretation of English law. Suffice it to say that the Plaintiff Padre joins issue with Portrans on these factual arguments and the sweeping statements of English law that Portrans presented to support the arguments[1], but the more relevant consideration for this Court is that that neither of the arguments presented by Portrans suffices to provide grounds to vacate the attachment. They go well beyond the standard of scrutiny that the district court is to apply when presented with a motion to vacate to vacate a maritime attachment.

In <u>Wajilam Exps. (Singapore) PTE, Ltd. v. ATL Shipping Ltd.</u>, Judge Lynch addressed the level of scrutiny to be used when presented with a motion to vacate post <u>Aqua Stoli</u>. 475 F. Supp. 2d 275 (S.D.N.Y. Oct. 23, 2006). Judge Lynch held that a plaintiff is not required to prove its case in order to defeat a motion to vacate - discovery has not been had and it would defeat the purpose of a Rule B maritime attachment to require a plaintiff asserting a valid *prima facie* maritime claim to prove that the facts in the complaint are true. 475 F. Supp. 2d at 279 (*citing to*

---

[1] For the sake of completeness, Padre will address the arguments made in connection with English law later in this Point I.

<u>Japan Line, Ltd. v. Willco Oil Ltd.</u>, 424 F.Supp. 1092, 1094 (D.Conn. 1976)); and, *compare*, <u>Finecom Shipping Ltd. v. Multi Trade Enterprises AG</u>, 2005 U.S. Dist. LEXIS 25761 * 4 (S.D.N.Y. 2005)(In evaluating a claim on motion for counter-security, the district court cautioned: "However, a court's ability to understand the merits of a dispute at an early stage is limited, and courts should be reluctant to prejudge the merits of claims based essentially on the pleadings and sparse record consisting of a few documents, in advance of discovery. This is particularly so when the ultimate merits will be decided not by this Court, but by an arbitration panel in another country.). As summarized by Judge Lynch in <u>Wajilam</u>:

> "A rule E(4)(f) hearing is not intended to definitely resolve the dispute between the parties, but only to make a preliminary determination of whether there are reasonable grounds for issuance of the arrest warrant."

475 F. Supp. 2d at 279 (*citing* <u>North of England Protecting and Indem. Ass'n v. M/V Nara</u>, 1999 U.S. Dist. LEXIS 22375 (E.D. La. 1999); *accord*, <u>Ice Flake Maritime Ltd. v. Westcoast AS</u>, 2007 U.S. Dist. LEXIS 75677 *4 (S.D.N.Y. Oct. 11, 2007)(Citing to the Court of Appeals' decision in *Aqua Stoli*, Judge Castel held: "Certainly, it is not the office of a motion to vacate to examine a claim under Rules 12 or 56 of the Federal Rules of Civil Procedure" because attachments are to be obtained with a minimum of litigation.").

Under the circumstances of this case, Padre sustains its burden of demonstrating that it has a valid *prima facie* maritime claim against Portrans and that should be the end of the inquiry. Portrans' arguments to the contrary on specific points, that go to the merits of the claim, seek to have this Court engage in a fact-intensive inquiry into the substance of the claim and such inquiry is improper for a rule E(4)(f) hearing brought on by motion to vacate.

Separate and apart from the above arguments, it must further be pointed out that a rule developed by the district courts is that the existence *vel non* of a valid maritime claim for purposes of a Rule B attachment turns on the applicable substantive law when assessing whether a maritime plaintiff has pled a *prima facie* case to justify the attachment. Sonito Shipping Company Ltd. v. Sun United Maritime Ltd., 478 F.Supp. 2d 532, 536 (S.D.N.Y. Mar. 19, 2007). This is so because, in the majority of cases, the purpose of initiating a Rule B action in New York is to obtain security for a maritime claim the merits of which will be addressed in another forum. *See*, Seatrans Shipping Corp. v. Interamericas Marine Transport, Ltd., 1997 U.S. Dist. Lexis 5665 (S.D.N.Y. 1997)(" Rule B contains no venue limitation. It may be used for the sole purpose of obtaining security.")

In Sonito Shipping, the district court, Charles S. Haight, Sr. D.J., held that the plaintiff did not have a valid *prima facie* claim for indemnity under an Inter-Club agreement pursuant to the governing law of the contract, therefore, the attachment was vacated. 478 F. Supp. 2d at 544 (Judge Haight held that Sonito's claim against Sun had not yet accrued,, noting that courts in this circuit have not been receptive to contingent indemnity claims as a base for maritime attachment.); *accord*, T&O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A., 415 F.Supp.2d 310, 315-16 (S.D.N.Y. Jan. 20, 2006)(The district court, Shira A. Scheindlin, D.J., held that Rule B is procedural in nature, and English law governed the question of whether T&O had made a prima facie showing that it had a maritime claim against Lydia Mar.).

The principles articulated in Sonito Shipping and T&O Shipping can be applied to the case at hand by reason of the fact that the defendant Portrans is resident in China and Padre intends to pursue its claim against Portrans in China. There are, however, some significant differences between the case now before the court and Sonito and T&O. In both Sonito and

8

T&O, the plaintiffs obtained Process of Attachment for claims that alleged breach of charter party whereby the parties to the disputes agreed to be bound by English law and the question of law in both cases was whether an indemnity claim had yet accrued. In the case at hand, by contrast, Padre's claim against Portrans is not for breach of a charter party, but rests on the allegations that Portrans breached its obligations and duties to Padre under the letter of Authorization and general principles of maritime law. Beyond that, there is no question of ripeness with respect to Padre's claim against Portrans. Padre's claim has accrued. *See,* 3rd Amended Complaint. Nevertheless, and by reason of the fact that Portrans is resident in China, Padre has pled that it will prosecute the claims against Portrans in the maritime courts of the People's Republic of China as follows:

> 145.    The Plaintiff PADRE has consulted with Chinese attorneys, who have advised the Plaintiff PADRE that it has a maritime claim against the Defendant PORTRANS for breach of the letter of Authorization which can be prosecuted in the maritime courts of the People's Republic of China.
>
> 146.    The Plaintiff PADRE is preparing to initiate a lawsuit against the Defendant PORTRANS for breach of the letter of Authorization in the maritime courts of the People's Republic of China.
>
> *See,* 3rd Amended Complaint, dated January 4, 2008.

The suit in this Court was initiated to obtain security for the Chinese action and, under the rationale of Sonito Shipping and T&O Shipping, the question becomes whether Padre is able to demonstrate that it has a valid *prima facie* maritime claim against defendant Portrans that can be pursued in the maritime courts of the People's Republic of China. Padre maintains that it does have such a claim, and Padre presents the accompanying declaration of its Chinese attorney,

9

Chen Zhensheng, to prove that it does have a valid *prima facie* maritime claim under Chinese law.

It is important to note that Chen Zhensheng was a Judge in the Shanghai Maritime Court from 1985 until 1999, and he now practices with one of the few private law firms in China that specializes in shipping law. *See*, Judge Chen Declaration, dated January 23, 2008 at ¶s 3 & 4. Simply put, Judge Chen is more than qualified to present an opinion as to whether or not Padre has set forth a valid *prima facie* maritime claim that can be prosecuted in China.

Judge Chen's legal opinion is based on his review of the facts and, also, his analysis of the legal position under Chinese law. His analysis of Chinese law directly contradicts the arguments made by Portrans, and Judge Chen concluded that he is of the "firm view that the Owner [Padre] is able to make a maritime claim against Portrans in maritime court in China." *See*, Judge Chen Declaration at page 7. Indeed, although the 3rd Amended Complaint makes it clear that Padre will pursue its claim against Portrans in the maritime courts of the People's Republic of China, Portrans has not presented any evidence to say that Padre has not set forth a valid *prima facie* maritime claim that can be prosecuted in China. *See generally*, Portrans' Memorandum of Law, dated January 10, 2008.

As set forth by Judge Chen, Padre makes a valid maritime claim against Portrans by breach of contract or by tort. *See*, Judge Chen Declaration at § B. With respect to the claim for breach of contract, Judge Chen advises that the letter of Authorization presented by the Master of the M/V PADRE constitutes a contract, and Portrans breached that contract when it issued bills of lading that were contrary to the Master's instructions. *See*, Judge Chen Declaration at page 5. According to Judge Chen, Portrans acted in violation of Chinese law when it acted on the other instructions from the agents of the charteres. *See*, Judge Chen Declaration at page 5. In the

10

alternative, Judge Chen confirms that Padre can pursue a claim for maritime tort against Portrans by reason of the fact that Padre will be able to establish all the elements for a claim of tort under the circumstances of this case and Chinese law. *See*, Judge Chen Declaration at pages 6 & 7.

Under the rationale of <u>Sonito Shipping</u> and <u>T&O Shipping</u>, Padre has, therefore, demonstrated that it has a *prima facie* maritime claim against Portrans under the substantive law of the jurisdiction where it will pursue its claim against Portrans. There is no evidence to the contrary and, therefore, absolutely no basis to vacate the attachment.

Finally, and because Portrans has chosen to argue the merits of its defenses to the Padre claim with reference to English law, it is necessary to address those arguments. Briefly stated, things are not as clear cut as Portrans would like them to be. Most certainly, there are no absolute rules of English law that required Portrans to issue "freight prepaid" bills of lading or prevented Portrans from following the Master's instructions to have the charter incorporated into the bills of lading and would, otherwise, operate to preclude Padre from asserting and prosecuting its maritime claims against Portrans. In support of Padre's position on these issues, the Court is directed to the accompanying declaration of Mark T. O'Neil, who is Padre's solicitor in London for this matter.

As set forth in the O'Neil Declaration, Mr. O'Neil makes a more than compelling argument that Portrans' has simply glossed over the points of English law with its effort to vacate the attachment on the basis that Padre fails to set forth a *prima facie* claim. The crux of the position presented by Mr. O'Neil is that Portrans' blind reliance on The NANFRI for an absolutist position is completely misplaced because The NANFRI was decided on its own facts and the case is so distinguishable from the case at hand that it provides nothing in the way of supporting authority for the arguments presented by Portrans. *See*, O'Neil Declaration at ¶s 6 to

11

12. As but one example, Mr. O'Neil makes clear that The NANFRI did not involve a situation where the Owners granted the charterer's agents authority to issue bills of lading, but the authority was conditional because of extenuating circumstances, which is what happened when the M/V PADRE was loading in China. *See*, O'Neil Declaration at ¶s 7 & 8. Indeed, in support of his position, Mr. O'Neil makes the observation that should have been obvious to Portrans before it sought to argue there was no claim to be asserted against Portrans, which is: "The Court cannot therefore consider the case law on its own. The Court must look at the circumstances of the present case and the intentions of the parties in issuing and signing such an agreement [the Master's Authorization]." *See*, O'Neil Declaration at ¶ 9. Indeed, from a U.S. perspective, Mr. O'Neil's point only serves to underscore the wisdom of Judge Lynch's holding in the <u>Walijam</u> case, i.e. a plaintiff is not required to prove its case in order to defeat a motion to vacate because the Rule E hearing is only a preliminary hearing to determine if a case to answer has been asserted. 475 F. Supp. 2d at 279. Certainly, a case for Portrans to answer has been asserted and Portrans cannot wish it away with broad references to an English case that is distinguishable on the facts.

Mr. O'Neil also addresses Portrans' argument that the failure to follow the Master's instructions and incorporate the charter party in the bills of lading was immaterial. Without qualification, Mr. O'Neil states that Portrans is wrong, as a matter of law, because it was a very material condition that ultimately prevented the vessel Owner from asserting a lien on the cargo and, therefore, Padre was damaged. *See*, O'Neil Declaration at ¶ 14, and ¶s 15 to 24. In this regard, Mr. O'Neil notes that, as a matter of law in accordance with the <u>Molthes Rederi</u> decision, the vessel Owner was precluded from being able to exercise its contractual right to assert a lien

on the cargo or the sub-freights because, in order to be able to do so, the lien clause of the charter party had to become part of the contract of carriage. *See*, O'Neil Declaration at ¶ 23.

In the circumstances of this case, the validity of Mr. O'Neil's opinion is completely borne out by the facts that: (1) Portrans knew that the charterer, defendant Yong He, had not paid hire to Padre, *see*, Amended Complaint at ¶ 120 and Declaration of Xu Nuo, dated 26 December 2007, at ¶ 15; (2) the Master of the M/V PADRE told Portrans that he was not going to load any cargo because Yong He had not paid hire, *see* Amended Complaint at ¶ 120 and Declaration of Xu Nuo, dated 26 December 2007, at ¶ 15; and (3) the Master of the M/V PADRE provided Portrans with specific, but limited, authority to issue bills of lading so long as they were not marked "freight prepaid" and they incorporated the terms of the charter, *see* Amended Complaint at ¶ 124 and Ex. C thereto; (4) the whole purpose of instructing Portrans not to mark the bills of lading "freight prepaid" and to incorporate the charter was to protect the Owner's ability to lien the cargo because the charterer, Yong He, was not paying hire, *see*, O'Neil Declaration at ¶ 24; yet, (3) Portrans went ahead anyway and issued bills of lading that were predated, marked 'freight prepaid', failed to include the proper descriptions of the cargo and which did not incorporate the terms of the charter party, *see* Amended Complaint at ¶s 130 & 131, Ex. D thereto and Declaration of Xu Nuo, 10 January 2008 at ¶ 4.

To conclude on this point, the plaintiff Padre has pled a more than sufficient *prima facie* maritime case against Portrans, its pleadings are supported by more than sufficient factual allegations and, therefore, Padre's maritime claim against Portrans is sufficient under any applicable law be it U.S. law, Chinese law or English law. The jurisdictional prerequisite for a maritime attachment has been met, and the plaintiff Padre has satisfied the textual requirements of Rule B. Accordingly, the motion to vacate must be denied.

**POINT III**

**DEFENDANT PORTRANS HAS AN ATTACHABLE INTEREST IN THE FUNDS THAT HAVE BEEN RESTRINED PURSUANT TO THE WRITS OF ATTACHMENT**

Rule B provides, in relevant part:

If a defendant is not found within a district ... a verified complaint may contain a prayer for process to attach the defendant's *tangible or intangible personal property*--up to the amount sued for--in the hands of garnishees named in the process ... The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing the process of attachment and garnishment.
Rule B(1)(a)-(b)(Emphasis Added).

The Second Circuit has held that the definition of "property" is broad for the purposes of a Rule B attachment. Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 275 (2d Cir. 2002); Essar Int'l, Ltd. v. Martrade Gulf Logistics, 2007 U.S. Dist. LEXIS 61713 *4 (S.D.N.Y. Aug. 23, 2007). In Winter Storm, the Court of Appeals noted: "It is difficult to imagine words more inclusive than 'tangible or intangible' .... The phrase is the secular equivalent of the creed's reference to the maker 'of all there is, seen and unseen.'" Winter Storm, 310 F.3d at 276.

It is also well settled that attachable property for purposes of a Rule B attachment includes electronic funds ("EFTs") in the possession of an intermediary bank that are en route from a defendant remitter or en route to a defendant recipient. Winter Storm, 310 F.3d at 276-78; Aqua Stoli, 460 F.3d at 445-46; and, Compania Sudamericana de Vapores, S.A. v. Sinochem Tianjin Co., 2007 U.S. Dist. LEXIS 24737 * 9 & 11 (S.D.N.Y. April 4, 2007). In Compania Sudamericana, Judge Pauley, without any qualification, stated: "It is undisputed that *Aqua Stoli* ultimately reaffirmed the holding of *Winter Storm* that EFT payments in the hands of an

14

intermediary bank qualify as property subject to attachment under Rule B." 2007 U.S. Dist. LEXIS 24737 at * 11.

Consistent with the Court of Appeals' broadly inclusive view of attachable property for purposes of Rule B attachment, it is further well-settled that more than one party can have an attachable interest in the same property. Winter Storm, 310 F.3d at 278. For example, both the sender and recipient of an EFT can have "overlapping property rights," rendering the EFT attachable under Rule B if either party is a named defendant. See, HBC Hamburg Bulk Carriers GMBH & Co. KG v. Proteinas y Oleicos S.A. de C.V., 2005 U.S. Dist. LEXIS 8009 * 10 (S.D.N.Y. May 4, 2005)(The district court, Buchwald, D.J., held that defendant Proteinas had a clear attachable interest in funds which were sent as payments to Proteinas even though the sending-payor may have had an attachable interest as well.); and, General Tankers Pte. Ltd. v. Kundan Rice Mills Ltd., 2007 U.S. Dist. LEXIS 14355 * 7 & 8 (S.D.N.Y. Feb. 21, 2007) (The district court, Marrero, D.J., noted: "The result [of Aqua Stoli], allowing the attachment of an EFT against both the originator and beneficiary, was readily accepted by reason of the broad terms of Rule B's attachment language which does not require exclusive property interests.).

The only limitations on the broad rule of attachable property for purposes of Rule B, as set forth by the Court of Appeals, are that: (a) the defendant's interest in the EFT must be clear, see HBC Hamburg. 2005 U.S. Dist. LEXIS 8009 at * 10; and, only a named defendant's property can be attached, see DS Bulk Pte. Ltd. v. Calder Seacarrier Corp., 2006 U.S. Dist. LEXIS 39242 (S.D.N.Y. June 13, 2006)(The attachment was vacated because property of Universal Cargo Line's was attached, but Universal Cargo Lines was not named as defendant in the action).

In the case at hand, Padre meets its burden to show that property of the defendant has been found within the district and neither of the limitations mentioned in the preceding paragraph

affects that conclusion. First, it is beyond any argument that the funds restrained by garnishees Wachovia and Citibank were: (a) a remittance from Portrans as "originator" to Golden Pacific ($558,499.33, *see* Duffy declaration at Ex. A); (b) a remittance from Kent to Portrans as "beneficiary" ($22,000.00, *see* Duffy declaration at Ex. B); and, a remittance from Konvoy Denizcilik Ltd. to Portrans as "beneficiary" ($985.00, see Duffy declaration at Ex. C). In accordance with the law of this Circuit, the defendant Portrans absolutely did have an attachable interest in the funds because it was either the originator or the beneficiary of the EFTs at issue. Secondly, Portrans was, and still is, a defendant in this matter. *See*, 1st Amended Complaint at ¶s 116 -145. When these two elemental points are properly considered, it is clear that plaintiff Padre Shipping has met the requirements of Rule B, neither of the limitations on the restraint of property under Rule B is applicable and, thus, there are no valid grounds to vacate the attachment.

The Defendant Portrans' arguments to vacate the attachment are unavailing. First, and as a matter of law, the defendant Portrans has not directed this Court to any authority that has ever held that a named defendant in a Rule B action does not have an attachable interest in funds that are either being sent from said defendant as "originator" or to said defendant as "beneficiary." *See*, Portrans' Memo of Law, dated 10 January 2008 at Point II. Instead, defendant Portrans simply maintains that the funds restrained by garnishees Citibank and Wachovia Bank (i.e. ($558,499.33[2], $22,000.00[3] & $985.00[4]) and were, as a matter of fact, funds that were entrusted to Portrans by non-parties Golden Pacific and Kent and, therefore, Portrans was only an agent

---

[2] Citibank identified the "Originator" of the EFT remittance to be defendant Tianjin Portrans International Shipping Agency Co., Ltd. *See*, Duffy Declaration, dated Jan. 25, 2008 at Ex. A.
[3] Wachovia identified the "Beneficiary" of the EFT payment to be defendant Tianjin Portrans International Shipping Agency Co., Ltd. *See*, Duffy Declaration, dated Jan. 25, 2008 at Ex. B.
[4] Wachovia identified the "Beneficiary" of the EFT payment to be defendant Tianjin Portrans International Shipping Agency Co., Ltd. *See*, Duffy Declaration, dated Jan. 25, 2008 at Ex. C.

with no interest in the funds. *See*, Portrans' Memo of Law, dated 10 January 2008 at page 15. This position is untenable because it completely ignores the settled rule that two parties may have an attachable interest in the same property and, consequently, the argument fails as a matter of law under the controlling law of this Circuit. Secondly, and even more dispositive to the instant motion, the factual argument advanced by Portrans presents an acute Achille's Heel that demonstrates that Portrans' argument is against the weight of authority from the courts of the Southern District of New York. *See e.g.*, AET Inc. Limited v. Procuradoria de Servicios Maritimos Cardoso & Fonesca, 464 F. Supp. 2d 241 (S.D.N.Y. 2006)(The district court, Chin, D.J., denied a motion to vacate that was presented by a Brazilian ship's agent).

The Achille's Heel in Portrans' factual argument is laid bare by Portrans' own evidence. Despite Portrans' attempts to avoid the same fate met by the defendant Procuradoria in the AET case with a tortured analysis of Winter Storm, the one dispositive fact that Portrans cannot avoid is that the EFTs restrained in this case represented U.S. dollar funds that were either being transferred to Portrans or from Protrans from a U.S. dollar bank account that is solely owned by Portrans. *See*, Declaration of Xu Nuo, dated 10 January 2008, at ¶s 6 & 8. The account to which the money was being remitted or was being remitted from was, and still is, Portrans' operating account. *See*, Declaration of Xu Nuo, dated 10 January 20-08, at ¶s 6, 8 & 10 ("Further, Portrans would not have an operational need for more than one U.S. Dollar account at more than one bank."). Moreover, and again as Portrans' own evidence makes undeniably clear, the Portrans account from which and to which the funds were being transferred is concededly used for Portrans' own U.S. Dollar transactions, such as the receipt of its own agency fees. *See*, Declaration of Xu Nuo, dated 10 January 2008, at ¶ 10 (" … there is nothing improper about

17

using that account for all its clients' U.S. Dollar transfers, *as well as it own U.S. Dollar transactions*, such as receipt of its agency fees.").

In this regard, the folly of the "trust" and "agent" argument presented by Portrans is made all that more clear when it is considered how Portrans handled the money that Portrans' collected in respect of the vessel at the center of this case, the M/V PADRE. Portrans readily admits that it collected freight from some of the exporters who were shipping cargo on board the M/V PADRE. *See*, Declaration of Xu Nuo, dated 26 December 2007, at ¶s 16 & 18. The freight that Portrans collected, $420,635.43, was credited to Portrans' U.S. Dollar account, and then remitted by Portrans' to the Owner of the M/V PADRE, in care of Initium Maritime, but not before Portrans unilaterally deducted sums for disbursements and for its own fees. *See*, Declaration of Xu Nuo, dated 26 December 2007, at 19. Portrans later collected additional freight money for other cargo shipped on the M/V PADRE and, again, it collected those funds into its own U.S. Dollar account from which it once again paid itself before releasing any funds. *See,* Declaration of Xu Nuo, dated 26 December 2007, at ¶s 20 & 21.

Under the circumstances of this case, the decision of Judge Chin in <u>AET Inc. Limited v. Procuradoria de Servicios Maritimos Cardoso & Fonesca</u>, 464 F. Supp. 2d 241 (S.D.N.Y. 2006), provides the proper analysis and this Court should reach the same conclusion as did Judge Chin. In <u>AET Inc.</u>, Judge Chin was presented with argument that is identical to the one presented by Portrans in that the defendant Procurdoria maintained that EFTs restrained were not its property, but were, instead, the property of its customers being transferred to Procurdoria for payment of expenses to third parties. 464 F.Supp. 2d at 243. Judge Chin, quite rightly, observed: "[t]he Second Circuit held that even though funds were intended as payment to a third party, they were still property of the defendant subject to attachment." 464 F.Supp.2d at 245. An important point

18

in Judge Chin's analysis was that funds in question were commingled, i.e. the payments were not held in a special trust account or in any other form of segregated account for the benefit of *a particular* ship owner. 464 F.Supp.2d at 245. Instead, and exactly the same as the situation presented in this case, the funds had been sent to pay Procurardoria for its services and, also, for Procuradoria to use in paying third-party vendors and other expenses. 464 F.Supp.2d at 245. Indeed, defendant Portrans concedes that this is the same situation when its' Mr. Xu Nuo declares that the funds being remitted to Golden Pacific and from Kent had not been held, nor were they being deposited, in any special escrow or in trust, but, instead, the funds came from and were being deposited to a general U.S. Dollar account over which only Portrans had full possession and control, and from which Portrans used for its own U.S. Dollar payments and collections. *See e.g.*, Declaration of Xu Nuo, dated 10 January 2008, at ¶ 10.

Portrans' arguments to distinguish its situation from that of the defendant Procuradoria in AET and, also, its attempts to argue that Judge Chin's decision in AET was wrong, *see* Portrans' Memorandum of Law Memorandum of Law at pages 11 & 12, both fall short and neither argument provides any basis to grant Portrans' motion to vacate. Such arguments amount to nothing more than an attempt to circumvent the Court of Appeals' holdings in Winter Storm and Aqua Stoli. Moreover, the arguments presented by Portrans seek to sidestep the Court of Appeals rationale that the term "property" for purposes of Rule B is to be interpreted broadly and, also, to sidestep the caution of the Court of Appeals that district courts are not to engage in a broad inquiry at a Rule E(4)(f) hearing. Aqua Stoli, 434 F.3d at 445.

For example, Portrans' argues that it did not have any property interest in the funds it was remitting to Golden Pacific or that Kent was remitting to Portrans, but it argument rests with the idea that the district court should engage in a fact-intensive inquiry into the reasons why the

defendant was initiating or receiving EFT payments and the reasons why the defendant did not maintain separate trust accounts. Beyond that, Portrans' argument rests with the vague policy argument that a port agent should not be subject to a Rule B attachment. None of these arguments are sound. They have, in fact, been specially rejected by the district courts. *See e.g,* Chiquita International Limited v. M/V BOSSE, 2007 U.S. Dist. LEXIS 75726 (S.D.N.Y. Oct. 11, 2007)(discussed below). As observed by Judge Leisure, in M/V BOSSE, if this Court were to accept Portrans' arguments, the undesirable and inevitable consequence of doing so would be that the district courts would become bogged down with repeated requests to vacate attachments based upon the elusive concept of the intended purpose of the funds at issue. M/V BOSSE 2007 U.S. Dist. LEXIS 75726 at * 10 and, *compare,* Aqua Stoli, 460 F.3d at 447 (The Court of Appeals critically stated: "The Royal Swan rule would impose a fact-intensive inquiry into the substantiality and nature of a defendant's presence in the district. Such an inquiry is improper because Rule B specifies the sum total of what must be shown for a valid maritime attachment. Intergrated's more limited inquiry respects the carefully chosen balance the rules have struck.").

This Court should further recognize that Judge Chin's decision from AET Inc. does not stand alone. The *ratio decidendi* of the AET case was applied by Judge Leisure in Chiquita International Limited v. M/V BOSSE, 2007 U.S. Dist. LEXIS 75726 (S.D.N.Y. Oct. 11, 2007). The weight of reasoned precedent is, therefore, against Portrans.

In M/V BOSSE, the defendants M/V BOSSE, Bosse Shipping and Holy House Shipping challenged the attachment of payments that were made to or from Bosse and Holy House on the basis that most of the restrained funds belonged to other shipowners whose vessels were managed by Holy House. 2007 U.S. Dist. LEXIS 75726 *8. Exactly the same as the argument being made by defendant Portrans in the case at hand, the defendant Holy House argued that it

20

was merely an agent without any personal interest in the transactions and it was authorized to present the motion for vacatur from the shipowners. *Id.* at * 8.  Again similar to the evidence presented herein by Portrans, Holy House supported its argument by presenting a table of the restrained funds, describing the intended business purpose for the transfer of funds in each instance. *Id.*  at * 9. In a well reasoned opinion which curiously did not even mention Judge Chin's decision in <u>AET</u>, Judge Leisure rejected Holy House's argument using much of the same logic as Judge Chin and Judge Leisure came to the same conclusion that Judge Chin did in <u>AET</u>. *Id.* at * 10. Judge Leisure found that Holy House's arguments concerning agency and with respect to Holy House's management role were not persuasive and, also, Holy House's intended use of the funds was irrelevant. *Id.* at *11.  Instead, the undisputed, and dispositive, point for Judge Leisure was that "the funds were directed to or from Holy House's bank account. *Id.* at *11. Accordingly, Judge Leisure held "the restraint of Holy House's funds was proper under Second Circuit precedent." *Id.* at * 11.

To conclude on this point, the argument advanced by Portrans to vacate the attachment on the grounds that its property has not been restrained is foreclosed by the weight of authority from the U.S. courts in the Southern District of New York that have properly addressed the issue in the same context as it is presented here, namely <u>AET v. Procuradoria</u> and <u>Chiquita v. M/V BOSSE</u>. Judge Chin made the argument against Portrans' position in <u>AET v. Procuradoria</u>, and Judge Leisure nailed it down independently with his opinion in <u>Chiquita v. M/V BOSSE</u>. Accordingly, Portrans has an attachable interest in the funds restrained by garnishee Wachovia and, consistent with the precedent established by Judge Chin and Judge Leisure, this Court should find that the restraint of the funds that were being remitted to Portrans was, and still is, proper under Second Circuit precedent.

21

## CONCLUSION

For all of the foregoing reasons, Plaintiff Padre has satisfied the requirements for a valid maritime attachment. Thus, the Motion of PORTRANS to vacate the attachment must be denied.

Dated: Port Washington, New York
January 25, 2008

Respectfully submitted,
CHALOS, O'CONNOR & DUFFY
Attorneys for Plaintiff
PADRE SHIPPING, INC

By: _____

Owen F. Duffy (OD-3144)
366 Main Street
Port Washington, New York 11050
Tel:    516-767-3600
Fax:    516-767-3925

22