CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff,
Padre Shipping, Inc.
366 Main Street
Port Washington, New York 11050
Tel:  (516) 767-3600
Fax:  (516) 767-3605
Owen F. Duffy (OD-3144)
George E. Murray (GM-4172)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

PADRE SHIPPING, INC.,

                                    Plaintiff,

                                                                          07 CV 9682 (JFK)

         v.

YONG HE SHIPPING, also known as,
YONG HE SHIPPING (HK) LIMITED;
PROSPER SHIPPING LIMITED;
SHANGHAI COSFAR SHIPPING
INTERNATIONAL CO. LTD.;
AEGEAN CARRIERS SA;
GOLDED TAI SHIPPING LIMITED;
SOUTH AEGEAN SHIPPING;
OLD EASTERN MEDITERRANEAN CO., SA;
CHANGSHU HOTHEART INTERNATIONAL
SHIPPING AGENCY;
TIANJIN PORTRANS INTERNATIONAL
SHIPPING AGENCY CO., LTD. and,
LIANYUNGANG FAREAST INTERNATIONAL
SHIPPING,

                                    Defendants.

-----------------------------------------------------------------X

# DECLARATION IN OPPOSITION
## TO PORTRANS' MOTION TO VACATE
### PROCESS OF MARITIME ATTACHMENT

LONDON-4582011.1 25/1/08 10:34 AM

The undersigned, Mark Terence O'Neil, a British national and resident in Little Fir House, Church Road, Hindhead Surrey GU26 6PF, present this declaration to set forth my opinions on the validity of the Plaintiff Padre Shipping Inc.'s (hereinafter "Padre") maritime claim against the defendant Tianjin Portrans International Shipping Agency Co., Ltd. (hereinafter "Portrans") under English law and in support of the Plaintiff's Opposition to the Defendant Portrans' Motion to Vacate the Process of Maritime Attachment and Garnishment that was issued by the Clerk of the Court for the above captioned matter.

I hereby declare as follows:

1. I qualified as a solicitor of England and Wales since 1993. I am a partner in Reed Smith Richards Butler LLP, which is a leading International law firm specializing in commercial law including all aspects of shipping law. I principally work in the Shipping Group and have acted on behalf of Owners, Charterers, P & I Clubs, Management Companies, Brokers and Ship Finance Banks.

2. I have read and considered the Motion to Vacate the Process of Maritime Attachment, dated January 10, 2008, presented by the Defendant Portrans with particular attention to the argument set forth therein that Plaintiff Padre fails to state a prima facie maritime claim against the Defendant Portrans.

3. In my capacity, as legal counsel for Padre in England and Wales, I have been asked by Padre to provide advice as to whether or not Padre has a valid claim against Portrans.

4. It is my unqualified opinion that Padre does have a valid maritime claim against Portrans pursuant to English law.

5. I fully agree with the facts as set out by Judge Chen within his declaration and the facts as presented in the Plaintiff's Complaint and therefore do not propose to reiterate the same facts herein.

**Relevant terms of the Charter**

Clause 23 - Lien

"The Owners shall have a lien upon all cargoes and all sub-freights and/or sub-hire irrespective of B/Ls for any amounts due under this Charter Party."

Clause 30 – Bills of Lading

"(a) The Master shall sign the bills of lading for cargo as presented in conformity with mates or tally clerk's receipts. However, the Charterers may sign bills of lading or waybills on behalf of the Master, with Master's prior written authority, always in strict conformity with maters receipts. Master will authorize in writing Charterers or their agents to sign on his behalf Bill(s) of Lading in strict conformity with Mate's receipt.

(b) All bills of lading shall be without prejudice to this Charter Party and the Charterers shall indemnify the Owners against all consequences or liability which may arise from any inconsistency between this Charter Party and any bills of lading signed by the Charterers or by the Master at their request."

Clause 71

"Owners / Master to authorize in writing Charterers or their agents to sign/release original bills of lading at load port on their behalf and same bills of lading to be **strictly** in accordance with mate's receipt...Charterers hereby indemnify Owners for any inconsistency between MRs and B(s)/L signed by authorized party."

**Issuing of bills of lading under English Law**

6. I have been provided with Portrans motion dated 10 January 2008 and have carefully considered the contents therein. It is evident that Portrans place heavy reliance on the judgment in *Federal Commerce & Navigation Co Ltd v Molena Alpha Inc (The Nanfri)* [1971] 1 Ll L Rep 201. After reviewing this case and considering the facts it is immediately apparent that *The Nanfri* can be distinguished from the present case. In *The Nanfri* owners provided

instructions to the masters' of the vessels prohibiting them from the signing of freight pre-paid bills of lading. This action was taken unilaterally by owners and imposed upon the masters and charterers. Charterers did not agree with the owner's decision and informed owners of their dissatisfaction with the same. The present case before the Court is quiet different.

7. In the present case, Owners granted authority to Charterers to issue bills of lading (a right which ordinarily was Owners) and agreed with charterers and their agents to the certain terms and conditions to be complied with when issuing such bills. This agreement is evidenced in the signed documents titled "Re: Master's authorization to charterers' agents to sign bs/l" dated 06/09/07 ('the agreement'). For the Court's convenience a copy of the document is appended hereto. Both the Master of the Vessel and Portrans signed this document indicating their agreement to be bound by the contents therein. Had Portrans disagreed with the authority terms they could very well have indicated so or qualified their acceptance of the same.

8. Clauses 30 and 71 of the Charter provide the basic right to Owners to authorize Charterers or their agents to sign bills of lading. The parties then agreed to specific terms for the authorization of the signing of the bills of lading as evidenced by the agreement.

9. I refer the Court to Chitty on Contracts, Vol I General Principles (2004 London Sweet & Maxwell) which is a highly reputable text book that is often cited in the Courts of England and Wales. Chitty at para 12-072 provides that under English law the courts must give effect to the intention of the parties and "it is not open to the court to revise the words used by the parties, or to put them a meaning other than that which they ordinarily bear, in order to bring them into line with what the court may think the parties really intended or ought to have intended." There is no doubt that Owners and Portrans intended to be bound by the terms set out in the signed agreement. If the intention of the parties was for this document not to alter the position under the Charter then there would have been absolutely no purpose at all in issuing and signing such a document. The Court cannot therefore consider the case law on its own. The Court must look at the circumstances of the present case and the intentions of the parties in issuing and signing such an agreement.

10. It is in my view that *The Nanfri* cannot be applied to the specific

circumstances of this case where an additional agreement relating specifically to the wording of the bills of lading exists as between Owners and Portrans. In *The Nanfri* charterers informed owners that if the bills were not marked 'freight prepaid' their position commercially would be prejudiced. In the present case no such objection or protest was indicated to Owners and as such prejudice could occur in circumstances in which the original right to issue bills was Owners'. In fact quiet the opposite as Charterers and their agents fully agreed to the terms within the agreement and this is evidenced by their signatures at the bottom of the agreement.

11. In Portrans' motion they quote of the judgment of *The Nanfri* extensively and in particular underline references to the fact that charterers are entitled to decide what bills of lading are appropriate for their trade. I wholly agree with this proposition. However, in the circumstances, Portrans, as Charterers' agents, elected for their own commercial reasons to enter into the agreement with Owners.

12. In my opinion as an English solicitor the parties, Owners and Portrans, were under a duty to comply with the conditions as set out in agreement. My opinion is further strengthened by the fact that the agreement provided that in the event Portrans were to breach this agreement then Portrans "will be held liable of the cost of all damages and consequential expenses." The parties had clearly viewed this document as binding and in the event of any breach severe consequences were to follow. Portrans were aware of these consequences and signed the agreement.

13. The events that followed meant that Owners needed to rely on the bills of lading (properly issued in accordance with the authority terms agreed) in order to exercise a lien on the cargo. Charterers repeatedly failed to pay hire on time and/or at all. Owner's recourse against Charterers would be to exercise a lien on the cargo. However, under English law this could only have been done if the terms of the Charter were incorporated into the bills of lading (including the lien clause). The fact that the bills were marked "freight prepaid" would not, in itself, have deprived Owners of exercising a lien on the cargo.

14. Owners were not able to exercise a lien on the cargo due to the fact that the terms of the agreement were not complied with. In particular the bills did <u>not</u> incorporate all terms, conditions, liberties and exceptions of the c/p dd

5

29/08/07. Had the bills included all terms and conditions from the charter Owners would have been entitled to exercise a lien on the cargo due to the favourable clause in the charter:-

*Clause 23 Liens*

*The Owners shall have a lien upon all cargoes and all sub-freights and/or sub-hire irrespective of B/Ls for any amounts due under this Charter Party.*

Under English law this would have entitled owners to exercise a lien on the cargo despite the bills of lading being marked "freight prepaid".

15. I would like to refer the Court to paragraph 30.5 of Wilford on Time Charterers which states:-

   *"The owners' lien gives them no right as against cargo owners other than the time charterers themselves where that lien has not been incorporated into the relevant bill of lading."*

16. The above passage clearly depicts the importance of having the terms of the Charter incorporated into the bill of lading.

17. Wilford goes on to state at para 30.13:-

   *Where the bills of lading incorporate (expressly or by reference) the charter lien clause... the owners then have a contractual right to lien the cargo, whether or not it is owned by the charterers, and this they may exercise: see the judgment of Mocatta, J., in The Chrysovalandou Dyo [1981] 1 Lloyd's Rep. 159, at page 165.*

18. It was therefore imperative that the Charter terms were incorporated into the bills. Portrans breach of the agreement meant that Owners were unable to exercise a lien and had to bear the losses.

19. Furthermore, Portrans did not act in accordance with their authority under the agreement but also did not act as per the Charter.

20. Clause 71 of the Charter provides as follows:-

> *"Clause 71 Bill of Lading*
> *Owners / Master to authorize in writing Charterers or their agents to*
> *sign/release original bills of lading at load port on their behalf and same bills*
> *of lading to be **strictly** in accordance with mate's receipt."*

21. Portrans not only failed to issue bills of lading strictly in accordance with the agreement but also the Charter and the mate's receipts. Portrans unlawfully issued a number of bills of lading that were pre-dated. This is a clear breach of English maritime law as well as the current Charter in question. The relevant bills that were unlawfully issued were: PT-02, PT-06 and PT-07. These bills are all dated 30/09/07, 30/09/07 and 29/09/07 respectively. It is clear from the mates receipts that the cargo was loaded on the 6/10/07. Under English law and in accordance with Clause 71 of the Charter, the bills must be dated with the date of the cargo loaded on board the vessel.

22. Portrans were therefore in clear breach of the charter and therefore in accordance with *The Nanfri*, and as quoted by Portrans on page 9 of their motion, the master would have been entitled to refuse to sign the bills of lading as the bills that were not in accordance with the terms of the Charter. The trust of issuing the bills was placed in the hands of Portrans who palpably breached the letter of authorization.

23. With regards to exercising a lien on the sub-freights, I would refer the Court to the case of *Molthes Rederi v. Ellerman's Wilson Line* (1926) Ll. L. Rep. 259 where Greer,J., said that where sub-freights were due to the charterers: "...the owner could only become entitled to the sub-freight by virtue of the lien clause..." As I have advised above, due to Portrans breach of the agreement, no lien clause was incorporated into the bills of lading and therefore Owners had no right to exercise any liens including liens on sub-freights.

24. Due to Owners inability to exercise a lien they have suffered significant losses as a consequence. These losses are set out in the Plaintiff's Complaint at paragraph 99.

25. For the reasons I set out above, I am of the view that Owners have a valid claim as against Portrans under English Maritime Law. As the Plaintiff's counsel in England I should inform the Courts that I am not instructed to

pursue a claim under English law against Portrans. The case against Portrans is being pursued in China under the Chinese Maritime Code and I would therefore respectfully ask that the Court consider whether or not there is a valid claims against Portrans under Chinese law as opposed to English law.

I do so declare under penalty of perjury under 28 U.S.C. § 1746 and the laws of the United States of America that the foregoing is true and correct.

Dated: January 24, 2008
      London, England

                             Mark T. O'Neil