BLANK ROME, LLP
ATTORNEYS FOR DEFENDANT
TIANJIN INTERNATIONAL SHIPPING
AGENCY CO. LTD.
JACK A. GREENBAUM (JG 0039)
405 LEXINGTON AVE.
NEW YORK, N. Y. 10174]
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PADRE SHIPPING, INC.,

       Plaintiff,              07 CV 9682 (JFK)

- v –

YONG HE SHIPPING, *et al*,

       Defendants.

PETER ERNEST MILLS deposes and says:

1. I qualified as a barrister and solicitor in New Zealand in 1979, as a solicitor in England and Wales in 1984 and as a solicitor in Hong Kong in 1990. I practised shipping law in London with Messrs. Sinclair Roche & Temperley from 1980 to 1984 and with Messrs. Elborne Mitchell from 1984 to 1990. I was a partner of Elborne Mitchell from 1987 to 1990. Since 1990 I have practised shipping law in Hong Kong where I am a partner of Blank Rome Solicitors and Notaries of 5605 - 5607 The Center, 99 Queen's Road Central, Hong Kong SAR. I have acted on behalf of ship owners, charterers, hull & machinery underwriters and P&I clubs for the past 27 years.

2. I have read and considered the Declaration In Opposition To Portrans' Motion To Vacate Process Of Maritime Attachment made by Mr. Mark Terence O'Neil on January 24,

2008. I have noted that in Paragraphs 13 and 14, Mr. O'Neil has inferred that the Plaintiff, the Owner of "PADRE," could have exercised a lien on cargo at the discharge ports despite the presence of a "FREIGHT PRE-PAID" clause in the bills of lading.

3. I find this inference surprising for two reasons, namely:

i) It is a fundamental tenet of the shipping industry that the very purpose of a "FREIGHT PRE-PAID" bill of lading is to enable a purchaser of cargo to pay for the goods, safe in the knowledge that the ocean carrier of the cargo has been paid his freight and will not be able to exercise a lien over the cargo for unpaid freight.

ii) The English law on this subject was settled by The House of Lords in 1978 in the case of Federal Commerce and Navigation Ltd v. Molena Alpha Inc. [1979] 1 Lloyds Law Reports 201 to the effect that in the use of a vessel under time charter, the charterer has the power to decide what bills of lading are appropriate for its trade and to instruct masters to issue such bills as they consider necessary to maintain the trade. An owner's insistance that bills of lading be claused so as to incorporate the terms of the time charter would be contrary to the whole commercial purpose of the charterers.

4. I note that Mr. O'Neil does not deny the House of Lords' holding would preclude the Plaintiff from insisting that the bills of lading incorporate the charter party. Rather, he argues the port agent, Tianjin Portrans International Shipping Agency Co. Ltd. ("Portrans"), agreed on behalf of the time-charterer, Yong He Shipping, to alter the terms of the charter party so as to require that the bills incorporate the charter. Setting aside the question whether a mere husbanding agent would, merely by virtue of that relationship, have had either actual or ostensible authority to change the charter party terms, the fact is that the Master's letter of authority (Ex. C to the Third Amended Complaint) did not ask Portrans to modify the charter

party on Yong He's behalf. The signature line for the agent placed on the letter by the Master merely stated: "Received by."

I do so declare under penalty of perjury under 28 U.S.C. § 1746 and the laws of the United States of America that the foregoing is true and correct.

Executed this 29th day of January, 2008 at 5605 - 07 The Center, 99 Queen's Road Central, Hong Kong SAR.

_____
PETER ERNEST MILLS