UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PADRE SHIPPING, INC.,

      Plaintiff,                                    07 CV 9682 (JFK)

       - v –

YONG HE SHIPPING, *et al*,

      Defendants.

---

**REPLY MEMORANDUM IN SUPPORT OF MOTION BY
DEFENDANT TIANJIN PORTRANS INTERNATIONAL SHIPPING
AGENCY CO. LTD. TO VACATE MARITIME ATTACHMENT AND
<u>DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM</u>**

 

BLANK ROME, LLP
Attorneys for Defendant
TIANJIN INTERNATIONAL SHIPPING
AGENCY CO. LTD.
Jack A. Greenbaum (JG 0039)
405 Lexington Ave.
New York, N. Y. 10174
(212) 885-5000

Defendant Tianjin Portrans International Shipping Agency Ltd. ("Portrans") submits this Memorandum and the Declaration of Peter Mills, Esq. in reply to Plaintiff's opposition to Portrans' motion to vacate the order of attachment and dismiss the Third Amended Complaint ("the Complaint"), and/or to vacate the attachments of particular electronic fund transfers of $558,499.33 belonging to Golden Pacific Sea (HK) Group Ltd. ("Golden Pacific") and $22,000 belonging to Kent Shipping China Service Co. ("Kent Shipping").

## POINT I

## PLAINTIFF HAS NOT SHOWN IT HAS A PRIME FACIE CLAIM

### A. Plaintiff has incorrectly described the applicable standard.

It is plain that Plaintiff lacks any genuine response to the fact that the Complaint itself shows Portrans complied with the Master's direction to obey Yong He's instruction to issue "freight prepaid" bills of lading. Therefore, Plaintiff resorts to a half-truth, writing that the Master gave Portrans "specific, but limited, authority to issue bills of lading so long as they were not marked "freight prepaid. . . ." (Pl. Mem. at 13)[1] In fact, what the Master's letter said was: "Bills of lading marked 'freight prepaid' not to be released unless you receive instructions from the vessel's disponent Owners (Time Charterers) Messrs. Yong he shipping (hk) ltd." (Ex. C to the Complaint at ¶ 8). The Complaint's allegations show Portrans' did receive those instructions from Yong He, through its agent, Old Eastern Mediterranean. (Complaint ¶¶ 22, 25, 94-95, 119, 121; see Portrans' Supplemental Memorandum at 4-5, including n. 4.)[2] Plaintiff's brief does not deny these straightforward facts.

---

[1] Underscoring throughout this Memorandum is added unless otherwise indicated.

[2] In an attempt to create issues of fact where none exist, Plaintiff argues Portrans should not have issued freight prepaid bills of lading (despite the Master's and Yong He's instructions to do so) because it knew Yong He had not paid charter hire to Plaintiff, citing ¶ 120 of the Complaint and Mr. Xu's first Declaration. (Pl. Mem. at 13.) However, all the cited references are to hire unpaid as of (continued)

1

128947.06501/6611464v.1

Unable to deny its own allegations of fact, Plaintiff focuses on "admiralty" in the "valid prima facie admiralty claim" standard, but ignores "valid prima facie claim." It may be open to argument whether "prima facie" means something more under Supplemental Rule E(2)(a) than a claim that would survive a Rule 12(b)(6) motion, as Judge Sweet held in Dolco Investments, Ltd. v. Moonriver Development Ltd., 486 F. Supp. 2d 261, 272-73 (S.D.N.Y. 2007). It is certain, however, that it cannot mean something less than that. If a claim cannot stand up to Rule 12(b)(6), the Complaint must fall, whether it is an admiralty case or anything else. Supplemental Rule B does not rescind Rule 12. For example, a premature indemnity claim fails to state a prima facie claim and cannot support a maritime arrest or attachment. Greenwich Marine, Inc. v. S.S. ALEXANDRA, 339 F. 2d 901, 906-07 (2d Cir. 2002); Sonito Shipping Co. Ltd. v. Sun United Maritme Ltd., 06 Civ. 15308 (S,D,N.Y. March 16, 2007) [valid prima facie claim is a question of substantive law. *9-10, 19]; J. K. International Pty. Ltd. v. Agriko S.A., 06 Civ. 13259 (KMK), 2007 U.S. Dist. LEXIS 10674 (S.D.N.Y. Feb. 13, 2007); Bottiglieri di Navigazione S.P.A. v. Tradeline LLC, 06 Civ. 3705 (LAK), 2007 U.S. Dist. LEXIS 8278 (S.D.N.Y. Feb. 6, 2007).

Similarly, a veil piercing claim that recites no facts in support of its conclusory allegations fails to state a claim and cannot support a maritime attachment. Dolco, *supra*; Tide Line Inc. v. Eastrade Commodities Ltd., 06 Civ. 1979(KMW), 2006 U.S. Dist. LEXIS 95870, *42 (S.D.N.Y. Aug. 15, 2006).

Plaintiff quotes from Ice Flake Maritime Ltd. v. Westcoast AS, 2007 U.S. Dist. LEXIS 75677, *4 (S.D.N.Y. Oct. 11, 2007) (Pl. Mem. at 7) to the effect that a motion to vacate does not

---

October 1, 2007. That hire was paid on October 3 and 9, in part by funds Portrans itself collected from an exporter and remitted to Plaintiff's vessel manager, Initium, on the instructions of Old Eastern Mediterranean. (Complaint ¶¶ 27 37; Xu Decl. dated Dec. 26, 2007, ¶¶ 15-19 and Exs. 7-12 thereto.) Obviously, the Master entered port and loaded cargo because the hire was paid after his protest. The Complaint contains no allegation Portrans knew of any other unpaid hire installment.

2

128947.06501/6611464v.1

implicate Rules 12 and 56[3], but proceeds on the next page to illustrate the fallacy of that argument by citing Sonito, in which the attachment was vacated for failure to state a valid prima facie claim.

As Judge Wood aptly stated in Tide Line, at *21-23:

> for the complaint to show a prima facie claim, the complaint must comply with the relevant federal pleading requirements. * * * But it seems that defendant may, under Supplemental Rule E(4)(f), argue that plaintiff's pleadings are themselves insufficient to state such a claim; otherwise, it is not clear how a defendant could argue that the "prima facie claim" requirement of Supplemental Rule B has not actually been met."

Further, Portrans has moved herein for dismissal pursuant to Rule 12(b)(6).

The fundamental flaw in Plaintiff's opposition is its incorrect suggestion that Portrans impermissibly argues the merits of its defense. Plaintiff relies on this fallacious premise to ignore the facts in its own Complaint which show it has no valid prima facie claim. Plaintiff purposefully fails to acknowledge that the facts on which Portrans "argues the merits" are solely those alleged in the Complaint itself, and every motion to vacate or dismiss for failure to state a claim is based on the application of the law to the facts alleged in the Complaint. The law at issue may be foreign, but it is nonetheless an issue of law, not of fact, and therefore is properly argued on this motion. Federal Rules of Civil Procedure Rule 44.1. See *e.g.* Sonito and Bottiglieri, which construe English law regarding indemnity claims.

Plaintiff's burden to show why the attachment should not be vacated includes demonstrating whose law is applicable and what that law is. OGI Oceangate Transportation Co. Ltd. v. RP Logistics Pvt. Ltd., 06 Civ. 9441(RWS), 2007 U.S. Dist. LEXIS 46841 (S.D.N.Y. June 26, 2007), reconsideration denied, 2007 U.S. Dist. LEXIS 74180 (S.D.N.Y. Oct. 4, 2007).

---

[3] The issue in Ice Flake was whether the claim was maritime, not whether the Complaint stated a valid cause of action.

3

A plaintiff cannot carry its burden by asserting conclusions of law with no supporting authority, as its solicitor, Mr. O'Neil has done, *infra*. Further, as recognized in Sonito and Bottiglieri, even if a plaintiff cites supporting authority, it would nonetheless be incumbent on this Court to determine the foreign law, or at least whether the plaintiff carried its burden of persuading this Court with respect thereto. The Court may not uphold the attachment merely because a plaintiff asserts a conclusory legal argument that will eventually be decided in another forum.

### B. Plaintiff's Chinese lawyer has not shown a prima facie claim exists.

The Declaration by Judge Chen indicates that Chinese law regarding a causal relationship between a breach and an injury is the same as American law. Judge Chen quotes Art. 113 of the Chinese Contract Law to the effect that damages are recoverable for the "loss <u>resulting from</u> the breach. . .," and Art. 66 of the Civil Law: "An agent shall bear civil liability if he fails to perform his duties and <u>thus causes damage to the principal.</u>" Judge Chen's summary states the requirement that "(iii) There is the <u>causation</u> between such infringement and the losses." Thus, Judge Chen supports Portrans' position that causation is necessary.

Judge Chen does not address at all the issue of whether or not the Complaint shows there was any such causation. His Declaration does not discuss Portrans' points that (1) the Complaint shows Portrans complied with the Master's letter by obeying Yong He's instructions to issue freight prepaid bills of lading, and (2) failing to incorporate the charter in the bills caused no injury because the "freight prepaid" clause would have prevented Plaintiff from exercising a lien on cargo even if the bills incorporated the charter.

4

### C. Plaintiff's English lawyer has not shown a prima facie claim exists.

**i. Mr. O'Neil has not refuted that Portrans was authorized to issue "freight prepaid" bills of lading, and has not shown that Plaintiff could have exercised a lien on cargo carried under such bills even if the bills had incorporated the charter party.**

Mr. O'Neil's Declaration does not say a single word about the <u>fact</u> that the Master authorized Portrans to follow Yong He's instructions to issue "freight prepaid" bills of lading. Further, he devotes a bare two conclusory sentences (at ¶¶ 13, 14) of his 8 page Declaration to the bald contention that the "freight prepaid" clause on the bills of lading would not have prevented Plaintiff from exercising a lien on the cargo if the bills had incorporated the charter. No authority is cited for that opinion, and no argument is offered to explain away the House of Lords' statement, quoted and underscored in Portrans' Supplemental Memorandum, that:

> A freight pre-paid bill of lading might prejudice this lien, since, if the freight had been paid before the lien was sought to be exercised, there would be nothing on which it could operate.

Federal Commerce and Navigation Ltd. v. Molena Alpha Inc., [1979] Vol. 1 Ll. L. R. 201, 206.

Mr. O'Neil's conclusory assertion that the "freight prepaid" bills would not have precluded the exercise of a lien on cargo is actually quite surprising, because it is a fundamental tenet, widely known in the shipping industry, that the very purpose of issuing "freight prepaid" bills is to enable a buyer of the cargo to pay for the goods in the knowledge that the ocean carrier will not claim a lien for the shipping charges. (Mills Decl.) Therefore, a ship owner is estopped from denying the "freight prepaid" endorsement as against an innocent transferee of the bills of lading. As stated in The Robin Gray, 65 F. 2d 376, 378 (2d Cir. 1933), *cert. den. sub nom.* Seas Shipping Co. v. 3,251,000 Feet of Lumber, 290 U.S. 653 (1933):

> The libellant-appellant [ship owner] contends that the issuance of the prepaid bills of lading had no effect upon its right to recover charter hire. There was nothing in the charter to put the consignee on notice that the freight was not paid, and the law is well

5

established that a reference to a charter party in a bill of lading only incorporates that part of the charter not specifically covered by the bill of lading. * * *

Having issued the bills of lading in negotiable form knowing that they might come into the hands of purchasers for value relying on the representation of prepaid freight and having made no attempt to inform the consignees of the fact that the freight was not prepaid, the libellant is estopped from denying that the freight was prepaid.

### ii. Mr. O'Neil has not shown Plaintiff had a right to incorporate the charter in the bills of lading.

This point has become immaterial because Mr. O"Neil's Declaration does not carry Plaintiff's burden to show it could have exercised a lien even if the "freight prepaid" bills of lading had incorporated the charter party and its lien clause. Nevertheless, it is worthwhile pointing out the futility of Mr. O'Neil's attempt to distinguish the House of Lords' plain dictate in the NANFRI, [1979] Vol. 1, Ll. L. R. 201 (1978).

Mr. O'Neil's Declaration does not deny the NANFRI holds that, under the terms of the charter party herein ("The Master shall sign the bills of lading as presented . . . ."), Plaintiff and its Captain were precluded from incorporating the charter party in the bills of lading. Rather, Mr. O'Neil makes the extraordinary argument that a mere husbanding agent such as Portrans can alter the terms of the charter on behalf of the charterer, Yong He, by taking receipt of the Master's letter that contained conditions the charter party precluded him from imposing to begin with. The Master's letter, however, did not purport to ask Portrans to alter the charter party terms on Yong He's behalf. The signature line for the agent that the Master himself typed onto the letter merely stated "Received by," not "agreed" or "accepted." (Complaint Ex. C; Mills Decl.) Clearly, Portrans evinced no intent to alter the charter party, to which it was not privy, by merely acknowledging it received the letter. Certainly Portrans evinced no intent to alter the

charter party when it obeyed Old Eastern Mediterranean's instructions to sign bills of lading that did <u>not</u> incorporate the charter party.

The issue here is not whether Portrans exceeded the authority given to it by the Master by failing to incorporate the charter into the bills of lading, but whether allegedly doing so caused Plaintiff any injury. The answer is "no" because (1) the properly issued "freight prepaid" bills of lading would have trumped the incorporation of the charter party, and (2) Plaintiff had no right to incorporate the charter party under the charter's terms, and Portrans neither had authority, nor purported, to alter the charter's terms.

While Plaintiff may argue that these are issues for a foreign Court to determine, the fact is that Plaintiff has not met its burden in <u>this</u> Court to show it has a valid prima facie claim.

### POINT II

### THE FUNDS AT ISSUE BELONG TO GOLDEN PACIFIC SEA (HK) LTD. AND KENT SHIPPING CHINA SERVICE CO.

Plaintiff has not argued that there is any reason to doubt the veracity of the well documented Declarations by Golden Pacific's Mr. Zhang and Portrans' Mr. Xu, dated December 24 and 26, 2007, and Mr. Xu's Second Declaration. These statements and documents show that the restrained transfer of $558,499.33 is Golden Pacific's property and the restrained transfer of $22,000 is Kent Shipping's property. As noted in its original motion, Portrans asserts this branch of its motion as agent for Golden Pacific (and now Kent Shipping as well), and Golden Pacific, as a principal, joins in the motion by way of Mr. Zhang's Declaration.

Significantly, Plaintiff's Chinese shipping specialist lawyer, Judge Chen, has not taken issue with Mr. Xu's Second Declaration and the Chinese regulations exhibited thereto, which show that Portrans' use of one U.S. Dollar foreign exchange account for its own and its clients' funds is mandated by Chinese law and conforms to the industry practice in China.

Accordingly, there is no issue of fact as to the actual ownership of the funds or the law and practice in China regarding the so-called "commingling" of an agent's and client's funds.

Therefore, this case is not at all like <u>AET Inc. Limited v. Procuradioria de Servicios Maritimos</u>, 464 F. Supp. 2d 241 (S.D.N.Y. 2006), where Judge Chin found it significant that the defendant <u>failed</u> to show it was legally obligated to use the same account for its own funds and its clients' funds. Judge Chin held the plaintiff there met **its** burden of demonstrating the defendant had an interest in the attached property. *Id.* at 246. That is not true here, where the facts demonstrating the true ownership of the funds are not even contested.

Nor is this case like <u>Chiquita International Ltd. v. Bosse Shipping Ltd.</u>, 518 F. Supp. 2d 589 (S.D.N.Y. 2007), where the plaintiff contested the sufficiency of the defendant's evidence regarding its alleged agency status, and the Court specifically found the defendant's assertions were not persuasive. *Id.* at 594. Contrary to Plaintiff's argument (Pl. Mem. at 20), Judge Leisure did not "observe" that the district courts would be bogged down with arguments about the intended purpose of restrained funds. Rather, that was the plaintiff's argument, about which Judge Leisure made no comment at all. 518 F. Supp. 2d at 594.

As Plaintiff herein recognizes, "the defendant's interest in an EFT must be clear . . . and, only a named defendant's property can be attached. . ." Pl. Mem. at 15. Here, Plaintiff has not only failed to show Portrans has a clear interest in the two EFTs or that the EFTs were Portrans' property, but Plaintiff has failed even to contest the <u>fact</u> that the EFTs were the property of Golden Pacific and Kent Shipping.

Instead, Plaintiff argues that the Court may not engage in a fact intensive inquiry, and that, as a matter of law, the originator of an EFT has a property interest in the EFT.

8

In this case, no "fact intensive inquiry" is necessary. Plaintiff has not disputed the facts demonstrated by Mr. Xu and Mr. Zhang. There is no proscription against recognizing undisputed facts, and the Court should not ignore such facts. OGI, 2007 U.S. Dist. LEXIS 74180, *6-7; Transportes Navieros Y Terrestes S.A. de D.V. v. Fairmount Heavy Transport N.V., 07 CV 3076 (LAP), 2007 U.S. Dist. LEXIS 50260, *16 (S.D.N.Y. July 6, 2007).

Further, any supposed proscription against a fact-intensive inquiry pertains to the facts (extraneous to the Complaint) underlying a substantive dispute that will be heard in another forum. The same is not true about the facts and law underlying ownership of restrained property. That is for this Court to determine and there is no reason to make the true owner of restrained funds wait the outcome of a foreign arbitration or law suit to which it is not a party before having its day in this Court.

Defendants' Supplemental Memorandum addressed in detail the reasons why the mere act of wiring funds electronically does not in and of itself create a property interest in an agent who wires those funds on behalf of a principal. Plaintiff has not responded to those reasons, but simply argues that the Rule B cases have held the originator and beneficiary of a wire transfer have a "property interest" in it. However, Plaintiff ignores the fact that those cases involved originators or beneficiaries who admittedly owned the funds at the point of origin or would own the funds at the point of destination. That is not true of Portrans.

Plaintiff argues that more than one party may have a property interest in an EFT, thus acknowledging that Golden Pacific and Kent Shipping each have a property interest in their respective funds. What Plaintiff fails to address is that actual ownership is a superior property interest to whatever vague intangible interest an agent conceivably can have merely by virtue of having originated the EFT on its principal's behalf. Even if an agent were deemed to have some

indefinable "property interest," there is no gainsaying that the principal's actual ownership of the funds is <u>superior</u> to the agent's nebulous property interest. <u>See</u> Portrans' Supplemental Memorandum at 13-14. Obviously, an attaching plaintiff can obtain no more of a property interest than the defendant had. Here, the actual owner of the $558,499.33 has come directly to this Court to claim its superior property interest (Zhang Decl.), and Portrans has asserted Kent Shipping's superior claim to the $22,000 (which was restrained after the motion was filed) in its capacity as Kent Shipping's agent.

## CONCLUSION

### THE ATTACHMENTS SHOULD BE VACATED
### AND THE COMPLAINT SHOULD BE DISMISSED
### AS AGAINST DEFENDANT PORTRANS

Dated: January 29, 2008

                                        Respectfully submitted,
                                        BLANK ROME, LLP
                                        Attorneys for Tianjin Portrans
                                        International Shipping Agency Co. Ltd.

                                        By _____
                                          Jack A. Greenbaum (JG 0039)
                                        405 Lexington Ave.
                                        New York, N. Y. 10174
                                        (212) 885-5000