BLANK ROME, LLP
Attorneys for Defendant
TIANJIN PORTRANS INT'L
SHIPPING AGENCY CO., LTD.
Jack A. Greenbaum (JG 0039)
405 Lexington Ave.
New York, N. Y. 10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PADRE SHIPPING, INC.,

      Plaintiff,　　　　　　　　　07 CV 9682 (JFK)

  - v –

YONG HE SHIPPING, *et al*,

      Defendants.

---

### MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANT PORTRANS INTERNATIONAL SHIPPING AGENCY CO. LTD. TO VACATE MARITIME ATTACHMENT AND DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM

This memorandum is submitted on behalf of defendant Tianjin Portrans International Shipping Agency Co. Ltd. ("Portrans"), in support of its motion pursuant to Supplemental Rule E(4)(f) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Claims, and Rule 12(b)(6) of the Federal Rules of Civil Procedure, to (1) release from restraint a sum of US$558,499.33 that does not belong to Portrans or to any of the other defendants, but to a client of Portrans; (2) vacate an Order for issuance of Process of Maritime Attachment and Garnishment against Portrans' assets because the Complaint fails to state a prima facie claim against Portrans, and (3) dismiss the Complaint against Portrans for failure to state a claim. The owner of the restrained funds,

Golden Pacific Sea (H.K.) Group Ltd. ("Golden Pacific"), joins in Portrans' motion insofar as Golden Pacific's $558,499.33 is concerned. (Declaration of Zhang Ze Ming.)

## SUMMARY OF FACTS AND ARGUMENT

**A. Permitting attachments of funds transferred in the name of a port agent interferes with the property of innocent third parties and with the conduct of the <u>international shipping industry.</u>**

As shown in the Declaration of Portrans' General Manager, Xu Nuo, Portrans is an independent port agent in the Chinese port of Tianjin Xingang, Free Trade Zone. As such, it offers its services equally to any ship owner or operator whose ship calls at Tianjin Xingang to load or discharge cargo. Portrans is not owned or controlled by any shipping company, including the named defendants, not does it have any shareholders, directors, officers, employees, offices, communications numbers and addresses, or bank accounts in common with any of the defendants.

The services a port agent such as Portrans performs include arranging the myriad of activities a ship performs in port, for which its client, the ship owner or operator, of course must pay each of the vendors and service providers. These are listed in the Declaration of its General Manager, Xu Nuo, and in its website and brochure, annexed thereto.

The ship owner or operator remits to its appointed port agent the funds, in U.S. Dollars, with which the port agent will pay the vendors and service providers. As all U.S. Dollar electronic fund transfers pass through intermediary banks in New York, a maritime attachment naming the port agent as a defendant will interfere with the funds sent <u>in trust</u> by third party ship owners and operators to pay the pilots, tugs, stevedores, fuel vendors, ship chandlers, repairers, etc., etc., etc. Those funds thus belong to the port

900200.00001/6601190v.1

agent's client at the time the transfer is originated, at the time it passes through a New York intermediary bank, and at the time it is received in the foreign port agent's account, until such time as the port agent disburses it to the vendors and service providers.

Additionally, one of the functions routinely performed by a Chinese port agent is to collect freight money (payment for carriage of cargo) from local importers and exporters, and remit it to the ship owner or operator. Sometimes, the port agent deducts from the freight the cash to pay the vendors and service providers. The freight also is paid in U.S. Dollars, and is the property of the ship owner or operator while in the Chinese bank account of the port agent and while in the hands of an intermediary bank in New York.

By permitting plaintiffs to interfere with fund transfers between international port agents and their clients on the basis of as little substance as there is in the Complaint herein makes it impossible for an innocent port agent to conduct business or, therefore, to survive. The funds restrained on the whim of a plaintiff are the expenses that innocent shipping clients must remit to their port agent in order to have their ships entered in port, fueled, victualled, and loaded or discharged. Third-party ship owners and operators should not be penalized for engaging port agents who may on a single occasion have been the port agent for some defendant and thus, in the eyes of some plaintiff, have been tainted by that one-off transaction. And innocent port agents should not be put out of business because their client's funds are restrained in a lawsuit that unfoundedly names the port agent as a defendant, precluding them from conducting their clients' ships' business, or even returning the restrained funds to those innocent clients.

**B. The sum of US$558,449.33 restrained herein does not belong to Portrans or any of the other defendants.**

With respect to a sum of $558,449.33 restrained in this case, Portrans, in its capacity as the appointed port agent for Golden Pacific, collected freight from a cargo shipper in Tianjin, and ordered its bank to transmit the funds to Golden Pacific's bank in Shanghai. Because the freight was paid in U.S. Dollars, it passed through an intermediary bank in New York, where it was restrained as supposed property of Yong He or Portrans. In fact, however, the funds were Golden Pacific's property at both the point of origin of the fund transfer, at the point of restraint in New York, and at the intended destination in Shanghai.

**C. Portrans will not in the future possess any property of the other defendants.**

With respect to the ongoing service of Process of Maritime Attachment of supposed funds of Portrans, the fact is that Portrans does not possess and will not in the future possess any funds or other assets of any of the other defendants. Portrans merely acted on a single occasion as a port agent for the M/V PADRE, having been so appointed by a vessel operator named Old Eastern Mediterranean Co. SA. Portrans will not accept an appointment as port agent by any of the defendants in this action for the very reason that accepting such an appointment would carry the risk of continued interference with transfers between Portrans and its innocent clients. In view of that fact, the continued service of Process supposedly against Portrans' funds serves no legitimate purpose for Plaintiff, and would interfere with disbursements and freights belonging to other clients of Portrans. This would make it impossible for Portrans to remain in business.

900200.00001/6601190v.1

**D. As a matter of law, the Complaint does not state an actionable claim against Portrans.**

As a matter of law, the Complaint does not state a prima facie or actionable claim against Portrans because it does not specify any facts whatsoever in support of its allegation, "on information and belief," that Portrans is an alter ego or so-called "paying agent" for Yong He Shipping or any of the other defendants. Rather, the Complaint conclusorily recites the legal elements of a cause of action to "pierce the corporate veil," but no specific facts to show that any of those elements exist in this case. The single "fact" that Portrans on one occasion collected freight on the M/V PADRE, does not support a claim. Portrans acted as a port agent pursuant to an appointment by Old Eastern Mediterranean Shipping in collecting that freight payment. Receiving freights is one of the functions that an independent port agent performs for a client. Therefore, to allege that Portrans received freights as an agent does not import any wrongdoing or support a cause of action for piercing the veil. Nor does it support a bald contention that Portrans regularly receives monies for Yong He.

## ARGUMENT

### POINT I

**THE SUM OF US$558,449.33 WHICH HAS BEEN RESTRAINED SHOULD BE RELEASED BECAUSE IT IS NOT PROPERTY OF PORTRANS OR ANY OF THE OTHER DEFENDANTS**

Supplemental Rule E(4)(f) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Claims states:

> *Procedures for Release from Arrest of Attachment.* Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why

the arrest or attachment should not be vacated or other relief granted consistent with these rules.[1]

With respect to the restrained sums, Portrans makes this application as agent for the actual owner of the funds, Golden Pacific, who has become wrongfully entangled in this law suit. Golden Pacific affirms its support for the application. (Zhang Ze Ming Decl.)

In Aqua Stoli Ltd. v. Gardner Smith Pty. Ltd., 460 F. 2d 434 (2d Cir. 2006), the Second Circuit made clear that the plaintiff, not the defendant or owner of restrained funds, has the burden to show that the requirements of Supplemental Rule B have been met in response to a motion to vacate made under Supplemental Rule E(4)(f). The third of those requirements is that the plaintiff show it has attached property belonging to the defendant.

> We therefore hold that, in addition to having to meet the filing and service requirements of Rule B and E, an attachment should issue if the plaintiff shows that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment. Conversely, a district court must vacate an attachment if the plaintiff fails to sustain his burden of proof of showing that he has satisfied the requirements of Rules B and E.

Id. at 445. With respect to the US$558,449.33, Plaintiff must meet the third requirement above and show that the funds are "property of" one of the defendants. Dolco Investments, Ltd. v. Moonriver Development Ltd., 486 F. Supp. 2d 261, 270 (S.D.N.Y. 2007).

---

[1] Underscoring throughout this memorandum is added by us unless otherwise indicated.

The caveat in <u>Aqua Stoli</u> not to engage in a fact-intensive inquiry pertains to the merits of a claim, where the merits are subject to arbitration abroad, or to plenary discovery if they are subject to a trial in this forum. The innocent owner of funds wrongly attached as property belonging to another need not await a decision on the merits of a dispute to which it is not a party. The innocent owner of funds is entitled to an immediate determination that it is indeed the owner and entitled to the possession and use of its property. That is one of the reasons Rule E(4)(f) requires a <u>prompt</u> hearing.

Here, Portrans and Golden Pacific have shown that the US$558,499.33 belongs to Golden Pacific, which is not a defendant and has no relationship to any defendant in this law suit.

## POINT II

### THE ORDER FOR ISSUANCE OF MARITIME ATTACHMENT AND GARNISHMENT AGAINST PORTRANS SHOULD BE VACATED, AND THE COMPLAINT AGAINST IT DISMISSED, BECAUSE THE COMPLAINT FAILS TO STATE A VALID PRIMA FACIE CLAIM

The Second Circuit held in <u>Aqua Stoli</u> that a plaintiff must show it has a valid prima facie maritime claim against a defendant in order to sustain issuance of Process of Maritime Attachment and Garnishment, *supra* at 445. District Judges have had to consider whether a "valid prima facie claim" means something more than a cause of action that would withstand a motion to dismiss under Rule 12(b)(6). It is unnecessary to consider that question in the present case, however, or to conduct a fact intensive inquiry, because the Complaint does not state a claim against Portrans that would withstand a motion to dismiss. On the contrary, Portrans's motion to dismiss under Rule 12(b)(6) should be granted.

The law requires that a "veil piercing" or "alter ego" complaint state <u>facts</u> tending to support the legal conclusions upon which alter ego liability is claimed. It is not sufficient to state only the legal conclusions, or to quote the legal standards and call them "facts." <u>Mason v. Burkett</u>, 756 F. Supp. 679, 683 (D. Conn. 1991) (granting summary judgment where plaintiffs failed to set forth sufficient facts to pierce the corporate veil); <u>Triemer v. Bobsan Corp.</u>, 70 F. Supp. 2d 375 (S.D.N.Y. 1999); <u>Strojmaterialintorg v. Russian Am. Commercial Corp.</u>, 815 F. Supp. 103, 105 (E.D.N.Y. 1993). In <u>Triemer</u>, the Court quoted from an apt New York decision: "Recasting . . . the criteria for piercing the corporate veil and framing them as allegations in the complaint does not, without more, sustain a cause of action. . . ." <u>Triemer</u> at 377, quoting <u>Cresser v. American Tobacco Co.</u>, 174 Misc. 2d 1, 5, 662 N.Y.S. 2d 374, 377 (N.Y. Sup. Ct. 1997).

Further, as written by Judge Sweet in rejecting an alter ego claim in <u>Dolco</u>, *supra*, at 272-73:

> Suits in admiralty are subject as well to *Fed. R. Civ. P. Supp. Rule E(2)(a)*, which provides that:
>
>> In actions to which this rule is applicable the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.
>
> *Fed. R. Civ. P. Supp. Rule E(2)(a)*.
>
> "This heightened pleading standard is not some pettifogging technicality meant to trap the unwary, but, rather, a legal rule designed to counterbalance the unique and drastic remedies that are available in in rem admiralty proceedings. *P.R. Ports Auth. V. Barge KATY-B, 427 F. 3d 93, 105 (1st Cir. 2005)* (noting that "[o]rdinary notice pleading does not satisfy the stringencies of the

> supplemental] rules"). To survive a motion to dismiss, Dolco "need only allege sufficient facts to support an inference that [GML] has so dominated and disregarded [Moonriver's] form" that GML, rather than Moonriver, conducted Moonriver's business. *Wajilam [Exps (Singapore) Pte. Ltd. v. ATL Shipping Ltd.]*, 2006 U.S. Dist. LEXIS 77033, at *20 [S.D.N.Y. Oct. 23, 2006].
>
> Dolco fails to meet this burden because it has not included any <u>factual allegations</u> that FML exercised complete domination over Moonriver. Other than the <u>conclusory allegation</u> of domination, the Complaint and the Amended Complaint both allege that GML paid Moonriver's debts to Dolco "from time to time." (Compl. P 7; Am. Compl. P 10). <u>Under the heightened standard of *Fed. R. Civ. P. Supp. Rule E(2)(a)*, more is required.</u> * * * Dolco points only to two instances where GML made payments on behalf of Moonriver, but makes no allegation of intermingling of funds, nor any other factor relevant to the inquiry. (See Lyons Aff., Ex. A at 1-3, 6-7). Under *Fed. R. Civ. P. Supp. R. E(2)(a)*, Dolco's solitary allegation insufficiently alerts Defendants to the basis of its alter ego claim.

A perusal of the Complaint herein shows that the "particulars" asserted against Portrans are fewer and weaker than those asserted in <u>Dolco</u>, and that Plaintiff has done nothing more than recast the criteria for piercing the corporate veil and framed them as allegations, without citing a single fact to support its conclusions. It should also be noted that, pursuant to the preamble of the Complaint, <u>all</u> of its allegations are made on "information and belief," *i.e.* they are conclusions, if not merely wishful thinking.

Paragraphs 22 – 42 of the Complaint state that Plaintiff had a charter party with Yong He Shipping, a/k/a Yong He Shipping (HK) Limited, which the latter breached. Paragraphs 43 through 55 assert the supposed basis for what is labeled as "A CAUSE OF ALTER-EGO LIABILITY" against each of the other eight defendants. Most of the

9

assertions in paragraphs 43–55 are general. Some are more specific, although they do not relate to Portrans. None of the contentions are substantiated by reference to a single fact.

Paragraph 44 alleges there existed a unity of ownership and interest between Yong He and the other eight defendants such that Yong He's corporate veil was ignored. No mention is made of who owned or had that interest in Yong He or any of the other defendants, on what facts Plaintiff bases its conclusory assertion of a unity of ownership and interest, or in what way Yong He's corporate veil was ignored. There is nothing in this paragraph that alerts Portrans to the basis of the alter ego claim against it.

Paragraph 45 states Yong He "chartered the M/V PADRE in the name of" the other eight defendants. That allegation doesn't even make sense. Paragraph 22 states the charter party was made in the name of Yong He. Paragraph 45 goes on to say the other eight defendants "were the charterer of the M/V PADRE." This assertion also makes no sense. There was one charterer, not eight or nine. In any event, no fact is recited to support the conclusion that all of these defendants were the charterer[s] of the vessel. Nothing in this paragraph alerts Portrans to the basis of the alter ego claim against it.

Paragraph 46 states that Yong He and the other eight defendants "have or had overlapping ownership, management, personnel and purposes" and "did not operate at arms length." Again, there is not a single example of a fact that would support such conclusions. No shareholder, officer, director or employee is named, much less one who is common to more than one of the defendants. Nothing in this paragraph alerts Portrans to the basis of the alter ego claim against it.

900200.00001/6601190v.1

Paragraph 47 states there was an intermingling of funds between Yong He and the other eight defendants, but, again, no <u>fact</u> is cited to support such a conclusory allegation. Nothing in this paragraph alerts Portrans to the basis of the alter ego claim against it.

Paragraph 52 states the eight "alter ego" defendants controlled and used Yong He for their own purposes. Not only is there missing from that allegation any factual support for the stated conclusion, but there is not even a proffered explanation of how eight corporations dominated and controlled one corporation to accomplish the purposes of all eight. It just does not make any sense. There is nothing in this paragraph that alerts Portrans to the basis of the alter ego claim against it.

Paragraph 53 asserts that the eight alter ego defendants disregarded Yong He's corporate form to the extent that Yong He was carrying on the business and operations of defendants Prosper and Shanghai. Not only is there no factual basis offered for the conclusory assertion, but it would not establish a claim against Portrans if Yong He was indeed carrying on the business of two other, different defendants. There is nothing in this paragraph that alerts Portrans to the basis of the alter ego claim against it.

Paragraph 54 states "there are reasonable grounds to conclude" that the eight defendants are "alter egos" of Yong He. Nothing can be more conclusory than an assertion that something may be concluded, but no factual "grounds" are cited.

Turning next from the unsubstantiated general conclusions to the unsubstantiated slightly more specific allegations:

Paragraph 48 states that on two occasions, defendant Prosper made hire payments on behalf of Yong He. Obviously, that has no bearing on the alter ego claim against Portrans.

11

Paragraph 49 states that defendant Agean issued bills of lading on the M/V PADRE. Again, that has no bearing on the alter ego claim against Portrans.

Paragraph 50 states that defendant Golden Tai arranged to remit money to defendant South Agean to pay hire on the PADRE. Again, that has no bearing on the alter ego claim against Portrans.

Paragraph 51 states that Portrans (referred to as "Tianjin") and defendants Changshu and Liangyungang "were agents of" Yong He and "made partial hire payments on behalf of the defendant YONG HE in circumstances where neither GOLDEN TAI nor SOUTH AGEAN were not contractually obligated to PADRE." It is impossible to fathom what the relationship between "Golden Tai" or "South Agean" and the PADRE has to do with alleged partial hire payments by three other defendants.

Further, if Portrans was an <u>agent</u> of Yong He and remitted money in that capacity, that would not make Portrans liable as an "alter ego." As shown by the Xu Declaration, Portrans was indeed a port agent for the M/V PADRE on one occasion and, in that entirely innocent capacity, did collect and remit freights from one exporter to the account of a company called Initium, and from another exporter to the account of Prosper, all on the orders of the party who appointed Portrans as port agent for the PADRE. If that was a partial payment of hire is unknown to Portrans. There is nothing in the allegation that Portrans acted as an agent that alerts Portrans to the basis of the alter ego claim against it.

Finally, paragraph 55 asserts that Yong He "utilizes" the other eight defendants "to transfer funds to and from New York . . . in an attempt to evade Process of Maritime Attachment and, therefore, such parties are [sentence incomplete]." As previously stated, Portrans' collection and remittance of freight money on the PADRE was done in the

900200.00001/6601190v.1

ordinary course of its routine port agency functions and on the instructions of the client who appointed Portrans. Portrans was not aware of any involvement of Yong He.

The Complaint offers no factual basis to assert this is some sort of a continuing practice on Portrans' part. Indeed, that would be entirely inconsistent with the fact that Portrans only collects freight on ships loading or discharging in Tianjin and only if Portrans has been appointed to act as the port agent for such ships. It would be groundless and untenable to permit Plaintiff to interfere with the freight or disbursement remittances of all of Portrans' other clients merely because Portrans acted as a port agent on one occasion for a ship that was allegedly chartered to Yong He. Paragraph 55 asserts no <u>factual</u> basis, and cannot possibly assert any factual basis, to support a conclusory prediction that Portrans will transfer funds belonging to Yong He in the future.

## CONCLUSION

### THE ATTACHMENT SHOULD BE VACATED AND THE COMPLAINT SHOULD BE DISMISSED AS AGAINST DEFENDANT PORTRANS

Dated: December 26, 2007
   New York, N. Y.

   Respectfully submitted,

   BLANK ROME, LLP
   Attorneys for Defendant
   Tianjin Portrans International
   Shipping Agency Co. Ltd.

   By_____
      Jack A. Greenbaum (JG 0039)
      405 Lexington Ave.
      New York, N. Y. 10174
      (212) 885-5000

13