BLANK ROME, LLP
Attorneys for Defendant
TIANJIN PORTRANS INT'L
SHIPPING AGENCY CO., LTD.
Jack A. Greenbaum (JG 0039)
405 Lexington Ave.
New York, N. Y. 10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PADRE SHIPPING, INC.,

        Plaintiff,

– v –

YONG HE SHIPPING, *et al*,

        Defendants.

07 CV 9682 (JFK)

**DECLARATION IN SUPPORT
OF MOTION TO VACATE
MARITIME ATTACHMENT**

---

XU NUO deposes and says:

1. I am the General Manager of Tianjin Portrans International Shipping Agency Co., Ltd. (hereafter "Portrans"), one of the parties named as a defendant in this maritime attachment action. Portrans is an independent port agent in the Chinese port of Tianjin Xingang. This Declaration is submitted in support of Portrans' motion to vacate a restraint of $558,499.33 that Portrans had remitted to one of its clients, Golden Pacific Sea (H.K.) Group, Ltd. ("Golden Pacific"), on the grounds that the funds do not belong to Portrans or any of the other defendants. Additionally, Portrans moves to vacate the Order for the issuance of process of maritime attachment against Portrans, and to dismiss the Complaint against it, because the Complaint fails to state an actionable claim against Portrans.

**PORTRANS IS AN INDEPENDENT PORT AGENT.**

2. Portrans is a Chinese company engaged in business as an independent port agent in the Chinese port of Tianjin Xingang. Portrans has been registered as a port agent in the Tianjin Free Trade Zone, People's Republic of China, since January 2003.

3. The following exhibits are annexed hereto.

Ex. 1: Portrans' Corporate Business License dated January 24, 2003 (with English translation), which authorizes Portrans to operate as a port agent in Tianjin Xingang..

Ex. 2: Portrans' International Shipping Agency Qualification Registration Certificate (with English translation).

Ex. 3: Portrans' brochure.

Ex. 4: Portrans' web site pages.

4. As an independent port agent, Portrans offers its services equally to all ship owners, managers, operators, or charterers whose vessels call at Tianjin Xingang to load or discharge cargo. Portrans is not owned or controlled by, and does not work exclusively for, any shipping company or ship owning or operating company or any other kind of company. Portrans' shareholders, officers, directors and employees are not shareholders, officers, directors, or employees of any shipping company or ship owning or operating company or any other kind of company. In particular, Portrans shares no common owners, officers, directors, or employees with Yong He Shipping or any of the other defendants named in this law suit. Further, Portrans does not share any offices, telephone numbers, telefax numbers, email addresses, or bank accounts with anyone else, including, particularly, any of the defendants named in this law suit.

5. As a port agent, Portrans' function is to arrange all the services required by a vessel calling at the port of Tianjin which its client (the ship owner, manager, operator, or charterer, as the case may be) is responsible to arrange pursuant to whatever contract the ship is performing under. The scope of Portrans' business activities is summarized in its web site (Ex. 4, first page *et seq*) and in its brochure (Ex. 3). As stated in Ex. 3, at the third page, Portrans' business scope includes:

> Declaring vessels' schedule to port authority and parties concerned, fill vessels'' inward and outward formalities, arrange pilot, tug-boat, berthing/sailing, inspecting, repairing, hold cleaning, fumigation, cargo trimming, lashing, maritime affairs, on/off hire survey and vsl delivery. Arrange cargo loading, discharging, supercargo, tally, cargo broker, storage and transshipment, etc.; accept space booking, B/L [bill of lading] issuing, acting for freight collection and settlement, negotiating about demurrage and dispatch on behalf of owners/charterers/shipper. Ship's supply such as bunker [fuel oil], fresh water, stores and provisions, etc. Handle customs clearance and delivery for spare parts and ship's stores. main ports of China. . . . Disposal garbage and oil residues . . . . Crew repatriation, hospitalization, visit and other relevant business, such as crew relative calling on Tianjin, letters delivery or temporary commitments by the captain . . . . and what's more we will built our own agency network system in the whole nation. . .

6. In order to pay vendors and service providers, plus its agency fee, Portrans either receives funds from its clients, or else collects freights from the local importers or exporters of the ships' cargoes and deducts the disbursements and its fees before remitting the balance to its client. ("Freight" is the money paid for the carriage of cargo.) Such payments are typically made by electronic transfers of U.S. Dollars, and therefore pass through intermediary banks in New York.

## PORTRANS WAS APPOINTED BY THE OLD EASTERN MEDITERRANEAN CO. S.A. TO ACT AS PORT AGENT FOR THE M/V PADRE'S CALL AT TIANJIN XINGANG

7. Portrans' only involvement with the M/V PADRE was a single instance in which it acted as a port agent for the ship's call at Tianjin Xingang in October 2007, for which Portrans was appointed by a company in Greece named The Old Eastern Mediterranean Co., S.A. ("Old Eastern Mediterranean").

8. Portrans was first introduced to Old Eastern Mediterranean in August 2007 by the Beijing branch of another port agent, Shanghai Cosfar International Shipping Co. Ltd.. Shanghai Cosfar was the cargo booking agent for Old Eastern Mediterranean.

9. Old Eastern Mediterranean first contacted Portrans about anticipated port calls by the M/V CHIOS and the M/V NAVA ELIZA, but those port calls were cancelled.

10. In August, 2007, Old Eastern Mediterranean then appointed Portrans as port agent for the M/V AFEA, which loaded cargo at Tianjin Xingang between September 12 and 20, 2007.

11. Also in August 2007, Old Eastern Mediterranean appointed Portrans as port agent for the M/V EL TENGO. The EL TENGO's name was changed to M/V PADRE when the ship was at a Chinese shipyard in late August or early September 2007.

12. The AFEA and PADRE were the only two occasions on which Portrans acted for Old Eastern. Mediterranean  As far as Portrans knew, Old Eastern Mediterranean was the operator of the AFEA and the PADRE, and was Portrans' client for the port calls of these ships.

13. Most communications with Old Eastern Mediterranean leading up to the port calls were by telephone, including our appointment as a port agent. Ex. 5 hereto is an

exchange of emails between Old East Mediterranean and Portrans regarding the anticipated port calls of all four ships, and confirming our appointment on the AFEA and PADRE, ex EL TENGO..

14. Portrans had no knowledge of or relationship with Yong He Shipping, except that Mr. Kamateros' email was captioned: "tct [trip time charter] dely [delivery] china redely med a/c yong he shipping." Ex. 5.

15. On October 1, 2007, the Master of the PADRE told Portrans he refused to proceed into berth because the head owner of the ship was not paid charter hire by the charterer. Portran's operation manager, Mr. Yi, reported this to Old Eastern Mediterranean by telephone and email. A copy of that email is Ex. 6 hereto.

16. Mr. Kamateros then instructed us by telephone to collect the ocean freight from one of the cargo exporters and remit it to the bank account of Initium Maritime Corp., which Mr. Kamateros said was the owner of the PADRE. Mr. Kamateros' instructions to remit the freight to Initium Maritime Corp. and to tell Initium we would do so, was confirmed in an exchange of emails dated October 2 and 3, 2007, which are part of Ex. 7 hereto.

17. The fact that Initium Maritime Corp. is or was at that time the manager and operator of the PADRE on behalf of the ship's registered owner is confirmed by Sea-Web, which is Lloyd's Register's on-line ship registry. A copy of Sea-Web's entry is Ex. 8 hereto.

18. Portrans submitted its Special Invoice for International Shipping Agency to the exporter, Changshu, for freight in the amount of US$420,635.30, a copy of which is Ex. 9 hereto.

19. Portrans then deducted a balance of disbursements due to it from the AFEA's port call and a service fee of ½ of 1%, and remitted the balance of $388,825.20 to Initium Maritime. A copy of Portrans' application to Bank of China for overseas funds transfer is Ex. 10 hereto. A copy of Bank of China's credit transfer advice is Ex. 11 hereto. A copy of Bank of China's confirmation of outward remittance is Ex. 12 hereto.

20. As mentioned above, Shanghai Cosfar was Old Eastern Mediterranean's booking agent for the cargo loaded on the PADRE. On October 29, 2007, Portrans received an email from Shanghai Cosfar instructing us to collect freight from another exporter in the sum of $503,897.27. A copy of that email (with English translation) is Ex. 13 hereto. Portrans' Special Invoice for International Shipping Agency to the cargo exporter, COSCO Lianyungang International Freight Co., Ltd. is Ex. 14 hereto.

21. We were instructed to deduct the port disbursements and fees on the PADRE's port call and remit the balance of US$401,877.80, to Prosper Shipping Limited. A copy of Portrans' application to Bank of China for overseas funds transfer is Ex. 15 hereto. A copy of Bank of China's credit transfer advice is Ex. 16 hereto. A copy of Bank of China's Confirmation of Outward Remittance is Ex. 17 hereto.

22. Portrans had no interest in the aforesaid sums and no involvement with them except in its capacity as an agent of Old Eastern Mediterranean.

**THE FUNDS RESTRAINED HEREIN BELONG TO ANOTHER CLIENT.**

23. On December 17, 2007, Portrans received a letter from Chalos, O'Connor & Duffy, notifying us that a sum of $558,449.33 was restrained in this law suit. This was a remittance Portrans had made to its client, Golden Pacific, in the ordinary course of Portrans' duties as a port agent for Golden Pacific, and had nothing whatsoever to do

900200.00001/6601182v.1

with any transaction or party to this law suit. The funds always belonged to Golden Pacific, not to Portrans or anyone else. The following exhibits in relation to this remittance are annexed hereto.

Ex. 18 is a letter from Golden Pacific's agent, Dalian Golden Pacific Sea Int'l Transportation Co. Ltd., to Portrans, dated Nov. 30, 2007, instructing Portrans to collect two freight payments, in the amounts of US$166,292.84 and US$392,633.61, for cargo loaded on the M/V FU ZHOU.

Ex. 19 is Golden Pacific's authorization to Portrans to collect on its behalf export ocean freight in the sum of US$558,620.45 for cargo loaded on the M/V FU ZHOU and remit it to Golden Pacific's account at China Merchants Bank, via Citibank Bank. N.A. as "corresponding" or intermediary bank.

Ex. 20 is Golden Pacific's Invoice for said freight.

Ex. 21 is a copy of Portrans' Special Invoices to the cargo exporters for the freights to be remitted to Golden Pacific.

Ex. 22 is Portrans' application to Bank of China for the overseas transfer of the said funds.

Ex. 23 is Bank of China's credit transfer advice for the said funds.

Ex. 24 is Bank of China's Confirmation of Outward Remittance for said funds.

**PORTRANS HAS NO EXPECTATION OF COMING INTO POSSESSION OF ANY FUNDS BELONGING TO ANY OF THE DEFENDANTS IN THIS LAW SUIT IN THE FUTURE.**

24. As already noted, the only circumstances in which Portrans would handle funds belonging to any shipping company would be to receive and disburse port expenses and/or freights in its capacity as a port agent. Portrans has no knowledge whether any of

the defendants named in this law suit continue to conduct business or intend to ask Portrans to act as a port agent for any of them. However, in order to avoid the kind of interference with its innocent clients' funds that has already occurred in this case, Portrans would not accept an engagement by any of the named defendants while they are still parties to this law suit.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Tianjin Free Trade Zone, PRC this 26 day of December 2007.

_____
XU NUO