```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
PADRE SHIPPING, INC.                 :

            Plaintiff,               :

         v.                          :
                                          MEMORANDUM OPINION
YONG HE SHIPPING, a/k/a YONG HE SHIPPING  :      & ORDER
(HK) LIMITED; PROSPER SHIPPING LIMITED;
SHANGHAI COSFAR SHIPPING INTERNATIONAL  :  07 Civ. 9682(JFK)
CO. LTD; AEGEAN CARRIERS SA; GOLDED TAI
SHIPPING LIMITED; SOUTH AEGEAN SHIPPING;  :
OLD EASTERN MEDITERRANEAN CO., SA;
CHANGSHU HOTHEART INTERNATIONAL SHIPPING  :
AGENCY; TIANJIN PORTRANS INTERNATIONAL
SHIPPING AGENCY CO., LTD; and LIANYUNGANG :
FAREAST INTERNATIONAL SHIPPING,
                                     :
            Defendants.
-------------------------------------X
APPEARANCES:

        For the Plaintiff:
            CHALOS O'CONNOR & DUFFY, LLP
            366 Main Street
            Port Washington, New York 11050-3120
                Of Counsel: Owen F. Duffy, Esq.

        For Defendant Tianjin Portrans:
            BLANK ROME LLP
            405 Lexington Avenue
            New York, New York 10174-0208
                Of Counsel: Jack A. Greenbaum, Esq.
```

**JOHN F. KEENAN, United States District Judge**

**JOHN F. KEENAN, United States District Judge**

This admiralty action arises from the carriage of iron ore from several ports in China to ports in Italy and Spain aboard plaintiff's vessel, the M/V PADRE. Plaintiff filed a complaint seeking maritime attachment and garnishment against defendants to obtain security for contemplated arbitration in London and litigation in China. Defendant Tianjin Portrans International Shipping Agency, Co. ("Portrans"), a port agent operating in China, moves to vacate the process of maritime attachment entered by this Court in favor of plaintiff and to release funds that have been attached. Portrans also moves to dismiss the complaint for failure to state a claim. For the reasons that follow, the motions are denied.

## BACKGROUND

**A. Facts**

The underlying facts, as alleged in plaintiff's Third Amended Complaint (hereinafter the "Complaint"), are as follows. Plaintiff Padre Shipping, Inc. ("Padre") is a Liberian company that owns the vessel M/V PADRE. In August 2007, Padre entered into a charter party agreement (the "charter party") with Yong He Shipping. Under the charter party, Yong He hired the M/V PADRE to load iron ore at several Chinese ports and carry the cargo to ports in Italy and Spain. Among other things, the charter party provided that "Yong He was authorized to sign

2

bills of lading on behalf of the Master of the [M/V/ PADRE], but only with the Master's prior written authority, always in strict conformity with the mate's receipts[,] and all bills of lading were to be issued strictly without prejudice to the Charter Party." (Compl. ¶ 29). According to Padre, the main reason for the restrictions on the issuance of the bills of lading was to preserve Padre's right to exercise a lien on the cargo being transported by Yong He in the event of Yong He's default on its payment obligations. The charter party also provided that disputes under the agreement would be governed by English law and submitted to arbitration in London.

Yong He hired Portrans to act as the M/V PADRE's port agent during the vessel's call into the Chinese port of Tianjin. Prior to the vessel's arrival there, Yong He allegedly defaulted on its initial charter hire payments to plaintiff. On October 1, 2007, the captain of the M/V PADRE informed Portrans that the ship could not berth at Tianjin and take on cargo due to Yong He's default on its hire payments. Yong He then instructed Portrans to collect the freight payments that Yong He was due to receive from the exporters of the iron ore and use those funds to pay Padre. Portrans responded that it would require Padre's authorization before remitting the freight payments to Padre.

On October 6, 2007, the captain of the M/V PADRE delivered a letter of authorization (the "Authorization Letter")

3

to Portrans. The Authorization Letter gave Portrans permission to collect freight payments and remit them to Padre in partial satisfaction of Yong He's outstanding hire obligations. The letter also gave Portrans the authority to issue bills of lading for the cargo to be brought on board the M/V PADRE, but imposed certain conditions. Among the conditions was the requirement that the bills of lading expressly incorporate the terms of the charter party and a prohibition against marking the bills of lading "freight pre-paid" unless Portrans received specific instructions from Yong He. The Authorization Letter further provided that Portrans' failure to comply with the terms of the letter would render Portrans liable for all damages arising from the unauthorized issuance of bills of lading. The Authorization Letter was signed by the M/V PADRE's captain and a representative of Portrans.

From October 2-7, 2007, the M/V PADRE was berthed at Tianjin and received the cargo of iron ore. Padre alleges that Portrans violated the Authorization Letter by issuing bills of lading for the cargo that, among other things, failed to expressly incorporate the terms of the charter party and were marked "freight prepaid" without proper authorization. As a consequence, Padre claims that it was unable to impose liens on the cargo to secure its claim against Yong He for accrued unpaid hire when the cargo was unloaded at the ports of discharge.

4

**B. Procedural History**

On October 31, 2007, Padre commenced this action by filing a verified complaint against Yong He, Portrans and other defendants, praying for an ex parte order of maritime attachment and garnishment pursuant to Rules B and E of the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure (an "order of attachment"). The Court granted the request and signed the order on the same date. Padre amended the complaint on December 5, 2007 and again with leave on December 6, 2007, adding several defendants and increasing the amount of damages sought. The Court issued a new order of attachment in the increased amount.

Padre served the order of attachment on the garnishee banks listed therein. On December 6, 2007, an Electronic Funds Transfer ("EFT") in the amount of $22,000 destined for Portrans' bank account in China was routed through an intermediary bank in New York City. The EFT was restrained there pursuant to the order of attachment. On December 12, 2007, an EFT in the amount of $558,499.33 wired from Portrans' same account was restrained while in transit through another New York City intermediary bank. A third EFT, in the amount of $985 and listing Portrans as a beneficiary, was restrained on January 14, 2008.

On December 26, 2007, Portrans moved pursuant to Supplemental Admiralty Rule E(4)(f) and Federal Rule of Civil

Procedure 12(b)(6) for an order vacating the attachment and dismissing the complaint. The first of two hearings was held on January 2, 2008. At the hearing, Padre indicated that it would again seek leave to amend the complaint. On January 9, 2008, Padre filed the Complaint, asserting a different theory of liability against Portrans and increasing the total damages to $6,163,866.50. Padre also requested a new order of attachment in that amount, which the Court granted.

The Complaint asserts claims of breach of maritime contract against Yong He, alter ego liability against six other defendants, direct maritime liability against Portrans for breach of the Authorization Letter, and similar claims against two other port agents for issuing unauthorized bills of lading. According to the Complaint, Padre is preparing to file suit against Portrans in the maritime courts of the People's Republic of China.

On January 10, 2008, Portrans renewed its motion to vacate the attachment and dismiss the Complaint. On January 30, 2008, the parties appeared again for another Rule E(4)(f) hearing and I reserved decision.

## DISCUSSION

Rules B and E authorize a court to issue an order of maritime attachment if the plaintiff satisfies the rules' filing and service requirements and can show that (1) plaintiff has a

valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property can be found within the district; and 4) there is no statutory or maritime law bar to the attachment. Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd, 460 F.3d 434, 445 (2d Cir. 2006). Once property has been restrained by a maritime attachment order, Supplemental Rule E(4)(f) allows the defendant or any party interested in the property to appear and move to vacate the attachment by order to show cause. Fed. R. Civ. P. Supp. R (E)(4)(f). To avoid vacatur of the attachment, the plaintiff must sustain his burden of showing that he has satisfied the requirements of Rules B and E, listed above. See Aqua Stoli, 460 F.3d at 445.[1]

Portrans moves to vacate the attachment under Supplemental Rule E(4)(f) on the grounds that (1) the Complaint fails to allege a valid prima facie admiralty claim against Portrans; and (2) the restrained funds belong to Portrans' clients, third parties not involved in this admiralty action, and therefore Portrans has no attachable interest in the funds. In addition, Portrans moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can granted.

---

[1] Aqua Stoli also held that a district court may vacate an attachment on equitable grounds under certain circumstances not

**A.   Sufficiency of Plaintiff's Claim**

Following Aqua Stoli, the majority of courts in this district have held that the standard for determining whether a plaintiff has asserted a "valid prima facie admiralty claim" is the "prima facie standard" rather than the more demanding "fair probability" or "reasonable grounds" standards. See Dolco Inv., Ltd. v. Moonriver Development, Ltd., 486 F. Supp. 2d 261, 266 (S.D.N.Y. 2007). Under the prima facie standard, a plaintiff need not present any evidence in support of his claim. Tide Line, Inc. v. Eastrade Commodities, Inc., No. 06 Civ. 1979, 2006 U.S. Dist. LEXIS 95870, *16 (S.D.N.Y. Aug. 15 2006). Plaintiff's complaint must contain factual allegations that meet Supplemental Rule E(2)(a)'s heightened pleading standard by "stat[ing] the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P. Supp. R. E(2)(a); see also Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty Ltd., 519 F. Supp. 2d 399, 409 (S.D.N.Y. 2007).

There appears to be some division over what a plaintiff must plead in order to allege a valid admiralty claim under the prima facie standard. Some cases have held that the

---

present in this case. See Aqua Stoli, 460 F.3d at 445.

8

claim must be valid under the substantive law that will govern the underlying action. See Sonito Shipping Co., Ltd. v. Sun United Maritime Ltd., 478 F. Supp. 2d 532, 536 (S.D.N.Y. 2007) (holding that plaintiff failed to assert a valid prima facie admiralty claim because a contingent indemnity claim was not valid under English law, which governed the charter party); OGI Oceangate Transp. Co. Ltd. v. RP Logistics PVT. Ltd., No. 06 Civ. 9441, 2007 WL 1834711, *4 (S.D.N.Y. June 26, 2007) (stating that "[w]ithout an understanding of the applicable law, the Court is unable to determine whether [plaintiff] has a valid prima facie claim"). Under this view, because "[n]either Rule B nor any other of the Supplemental Rules create 'a valid prima facie admiralty claim' . . . . [t]he existence vel non of a valid maritime claim for purposes of a Rule B writ of attachment turns upon the applicable substantive law." Sonito, 478 F. Supp. 2d at 536. Other courts have found the prima facie standard satisfied if the complaint merely demonstrates that the plaintiff has a claim that is "cognizable in admiralty [i.e.] . . . one which will support a finding of admiralty jurisdiction." Dolco Inv., 486 F. Supp. 2d at 266 (quoting Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 268 (2d Cir. 2002)). Under this view, "it is unnecessary for the Court to determine which law applies to the ultimate merits of plaintiff's claim." Ronda Ship Mgmt. Inc. v. Doha Asian Games Organising Comm., 511 F.

Supp. 2d 399, 404 (S.D.N.Y. 2007); see also Ice Flake Maritime Ltd. v. Westcoast AS, 2007 WL 2979471, *2 (S.D.N.Y. Oct 11., 2007) (describing the inquiry as "whether a claim facially falling within the court's [admiralty] jurisdiction is 'immaterial,' 'insubstantial' or 'frivolous'").

Portrans maintains that Padre can withstand a motion to vacate the attachment only by showing that the Complaint alleges a valid claim under the substantive law that will apply in the contemplated Chinese litigation. Portrans has also styled its vacatur motion as one to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). I find that Padre has alleged a valid prima facie admiralty claim under any conception of the prima facie standard. In addition, the Complaint sufficiently states a claim that can survive a motion to dismiss.

First, it is undisputed that Padre's claim against Portrans sounds in admiralty and invokes this Court's admiralty jurisdiction. The claim arises from a dispute over the Authorization Letter, a contract signed by a ship's captain and a representative of a port agent, concerning the issuance of bills of lading for cargo to be carried aboard a commercial vessel on a transoceanic voyage. Further, Portrans does not and cannot dispute that the Complaint states the underlying facts with sufficient particularity to allow Portrans "to commence an

10

investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P. Supp. R. E(2)(a). The Complaint alleges that Portrans violated the Authorization Letter by issuing without proper authority bills of lading that were marked "freight prepaid" and by failing to incorporate the terms of the charter party into those bills. The Complaint further avers that Portrans' breach prevented Padre from exercising a lien on the cargo to secure Padre's claim for unpaid hire against Yong He. The Complaint's factual allegations state the circumstances giving rise to Padre's claim against Portrans with enough specificity under Supplemental Rule E(2)(a).

Moreover, the Complaint states a facially valid claim for breach of maritime contract. Portrans asserts that the Complaint, on its face, establishes that the issuance of the bills marked "freight prepaid" in fact complied with the terms of the Authorization Letter. Therefore, Portrans contends, no claim against Portrans for issuing such bills can exist. It is true that the Authorization Letter permitted Portrans to issue "freight prepaid" bills of lading if Portrans received instructions from Yong He. Contrary to Portrans' claim, however, the Complaint does not establish that Portrans received instructions to issue the bills from Yong He via its agent, Old Eastern Mediterranean Co. S.A. ("Old Eastern"). The paragraphs of the Complaint to which Portrans points merely allege that Old

11

Eastern instructed "various shipping agents" to issue the freight prepaid bills of lading and may refer to the other port agents who are named in the action. (Compl. ¶¶ 94-95). Moreover, Padre's claim against Portrans would not be rendered insufficient even if the cited paragraphs did allege that Old Eastern instructed Portrans to issue the bills. These paragraphs form part of a separate cause of action against Old Eastern. Under federal pleading rules, plaintiffs are allowed to assert inconsistent facts in support of alternative claims, and courts may not construe allegations regarding one claim to be an admission against another. Henry v. Daytop Village, Inc., 42 F.3d 89, 95 (2d Cir. 1994) (discussing Rule 8(e)(2) of the Federal Rules of Civil Procedure).

Portrans also cites an English House of Lords case to assert that, under English Law, Padre was obliged to authorize the issuance of "freight prepaid" bills of lading and prohibited from insisting that the bills incorporate the charter party. Portrans has not explained, however, why Padre's claim may be dismissed as a matter of English Law. The charter party between Padre and Yong He is governed by English law. Portrans is not a signatory to the charter party and Portrans' liability is not alleged to stem from that contract. Portrans' asserted liability stems from the Authorization Letter, which it signed and allegedly breached in China. According to the Complaint,

12

Padre's Chinese lawyers have advised Padre that it has a viable maritime claim arising from the alleged breach that may be prosecuted in China's maritime courts. In addition, Padre has submitted the declaration of its counsel in China, Chen Zhensang, who is a former Shanghai maritime judge. He asserts that Padre has valid actions for breach of contract and maritime tort under Chinese law, and has provided English translations of the applicable Chinese statutes. Padre has made a sufficient showing that Chinese law will govern and that the complaint states a valid maritime claim under that law. See Ice Flake, 2007 WL 2979471 at *1 (S.D.N.Y. Oct. 11, 2007) (finding a valid prima facie maritime claim where "Plaintiff has made a plausible claim that Norwegian law will apply and economic losses are recoverable under that jurisdiction's law . . ."); see also Carbotrade S.P.A. v. Bureau Veritas, 99 F.3d 86, 90 (2d Cir. 1996) (listing the place of the wrongful act and the place of the contract amongst the factors governing maritime choice-of-law analysis).

      In sum, Padre has alleged a valid prima facie maritime claim under Supplemental Rule E(4)(f) and has stated a claim upon which relief may be granted under Rule 12(b)(6). The question of whether Portrans was authorized to issue the bills of lading is a merits issue that cannot be resolved by reference to the Complaint, and is more properly the subject of the

13

contemplated litigation in China.

**B.  Attachable Interest in the Restrained Funds**

The parties do not dispute that "[u]nder the law of this circuit, EFTs to or from a party are attachable by a court as they pass through banks located in that court's jurisdiction." Aqua Stoli, 460 F.3d at 436 (citing Winter Storm Shipping Ltd. v. TPI, 310 F.3d 263 (2d Cir. 2002)).  In Winter Storm, a defendant charterer originated a wire transfer of funds from its foreign bank account to a third party in a transaction unrelated to the underlying maritime action.  Winter Storm, 310 F.3d at 266-67.  The EFT was attached when it was routed through a New York intermediary bank. Id.  The Court of Appeals held that the EFT in the hands of the intermediary bank constituted the defendant's property and was therefore subject to attachment under Rule B. Id. at 274-79.  Although Winter Storm's holding was questioned in a footnote in Aqua Stoli, see 460 F.3d at 445 n.6, it was not overruled, and the courts of this District continue to follow it. See Compania Sudamericana de Vapores S.A. v. Sinochem Tianjin Co., No. 06 Civ. 13765, 2007 WL 1002265, **3-5 (S.D.N.Y. Apr. 4, 2007) (collecting cases).

Portrans was the originator of one restrained EFT and the beneficiary of two others.  This fact alone, Portrans asserts, does not conclusively establish its attachable property interest in the funds, despite Winter Storm's holding.  At oral

14

argument, Portrans asserted that this fact is merely prima facie evidence that the funds were its property. Portrans contends that it may rebut this presumption of ownership by showing that the funds wired to and from its Chinese bank account, and routed through New York intermediary banks, actually belonged to Portrans' clients, third parties who are not implicated in the present action. Portrans has submitted affidavits from its general manager and supporting exhibits, attesting that (1) the restrained EFT in the amount of $558,499.33 represents freight money that Portrans had collected and was remitting on behalf of and at the direction of its client, Golden Pacific; and (2) the restrained EFT in the amount of $22,000 was sent to Portrans from its client, Kent Shipping, as an advance for disbursements that Portrans would make on Kent's behalf. Because Portrans acted merely as an agent in handling its clients' funds, the argument goes, it has no attachable property interest in those funds under Rule B. Portrans asserts that this distinguishes the case from Winter Storm. In response to the Court's request for supplemental briefing on the issue, Portrans relies on Karaha Bodas Co, LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 313 F.3d 70 (2d Cir. 2002), a case involving neither admiralty law nor Rule B attachment.

In my view, Portrans' argument does not steer the case into waters uncharted by Winter Storm. "There is no question

15

that federal admiralty law regards a defendant's bank account as property subject to maritime attachment under Rule B." Winter Storm, 310 F.3d at 276. Moreover, as noted above, it is settled that EFTs originating from or destined for that bank account also constitute the defendant's attachable property. Rule B allows attachment of "defendant's tangible and intangible personal property." As Winter Storm commented, "it is difficult to imagine words more inclusive . . . . What manner of thing can be neither tangible nor intangible and yet still be 'property?'" Id. That Portrans' customers also may have a property interest in the attached funds is irrelevant. Multiple parties may have attachable interests in the same property, as demonstrated by the fact that an EFT constitutes the property of both the originator and the beneficiary. See HBC Hamburg Bulk Carriers GMBH & Co. KG v. Proteinas y Oleicos S.a. de C.V., No. 04 Civ. 6884, 2005 WL 1036127, *4 (S.D.N.Y. May 4, 2005) (stating that this "is the logical result of the broad terms of Rule B's attachment language coupled with the overlapping property rights of sending-payors and recipient-beneficiaries in EFTs"). The funds wired to and from Portrans' bank account constitute Portrans' property under Rule B and, consequently, are subject to maritime attachment.

The two other district courts that have confronted this issue are in accord. See Chiquita Int'l. Ltd. v. MV BOSSE,

16

518 F. Supp. 2d 589 (S.D.N.Y. 2007); <u>AET Inc. Ltd.</u> v. <u>Procuradoria de Servicos Martimos Cardoso & Fonesca</u>, 464 F. Supp. 2d 241 (S.D.N.Y. 2006). In both cases, port agent defendants who were originators and/or beneficiaries of attached EFTs claimed that, because they were merely agents handling their client's money, they had no attachable interest in the transferred funds. <u>See</u> <u>Chiquita</u>, 518 F. Supp. 2d at 593; <u>AET</u>, 464 F. Supp. 2d at 242. The courts in both cases concluded that the fact that the EFTs were wired to and/or from defendants' accounts was sufficient to establish an attachable interest in the funds under <u>Winter Storm</u> and <u>Aqua Stoli</u>. Judge Leisure's analysis in <u>Chiquita</u> is especially instructive:

> [Defendant's] assertions regarding agency and ownership of the attached funds are unpersuasive. Regardless of [its] management role with respect to the other non-party shipowners with whom it does business, it is undisputed that the funds were directed to or from defendant['s] bank accounts. [Defendant's] intended use of the funds that were in its account is irrelevant here. Therefore, the restraint of funds was proper under Second Circuit precedent.

<u>Chiquita</u>, 518 F. Supp. 2d at 594; <u>see also</u> <u>AET</u>, 464 F. Supp. 2d at 245 ("Under <u>Winter Storm</u>, the EFTs, which were intended for [defendant], are [defendant's] property and therefore are subject to [plaintiff's] Order of Attachment.").[2]

---

[2] In his decision in <u>AET</u>, Judge Chin went further and found it significant that, as in this case, the port agent defendant commingled in one general account its own funds and the funds of all of its

17

Padre has satisfied its burden of showing that the restrained EFTs are Portrans' attachable property under Rules B and E.

## Conclusion

For the foregoing reasons, defendant Portrans' motions to vacate the attachment and dismiss the Complaint are DENIED.

SO ORDERED.

Dated:   New York, New York
         April 25, 2008

                                            *[signature: John F. Keenan]*
                                            JOHN F. KEENAN
                                            United States District Judge

---

clients. Commingling creates an inference that the funds are not held pursuant to an agency relationship. In re Shulman Transport Enters., Inc., 744 F.2d 293, 295-96 (2d Cir. 1984). Because I find that Portrans has an attachable interest in the restrained funds despite its claims of agency, I do not address this issue.